1  EDMOND M. CONNOR (State Bar No. 65515)
   MATTHEW J. FLETCHER (State Bar No. 204071)
2  CONNOR, FLETCHER & HEDENKAMP LLP
   2211 Michelson Drive, Suite 1100
3  Irvine, California  92612
   Telephone:   (949) 622-2600
4  mfletcher@businesslit.com

5  *Attorneys for Plaintiffs David Placek, DP Investors III,*
   *LLC and DP SLF II Member, LLC*
6

7

8                    **UNITED STATES DISTRICT COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
9

10

11  DP INVESTORS III, LLC, DP SLF II            CASE NO.:
    MEMBER, LLC, and DAVID PLACEK
12                                              **COMPLAINT AND JURY TRIAL DEMAND**
                 Plaintiffs,
13

14  v.

15  WILLIAM SHOPOFF, individually, CINDY
    SHOPOFF, individually, and WILLIAM AND
16  CINDY SHOPOFF as TRUSTEES FOR THE
    SHOPOFF REVOCABLE TRUST,
17

18              Defendants.

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

Plaintiffs DP Investors III, LLC ("DP Investors III"), DP SLF II Member, LLC ("DP SLF II Member"), and David Placek (collectively "Plaintiffs"), by and through their undersigned attorneys, bring this Complaint against Defendants William Shopoff and Cindy Shopoff individually and William and Cindy Shopoff as Trustees of the Shopoff Revocable Trust (collectively, "Defendants" or "Guarantors") for breaches of certain guaranty agreements and fraud related to investment income due to Plaintiffs by two entities, Shopoff Investors III L.P. ("SI III") and Shopoff Investors IV ("SI IV") controlled by Defendants and their company, Shopoff Realty Investments, L.P. ("SRI").

**PRELIMINARY STATEMENT**

1. William and Cindy Shopoff operate a fraudulent business out of Orange County, California, that is disguised as a legitimate real estate investment firm, but is a sham built on repeated broken promises and financial misrepresentations designed exclusively to line their pockets and swindle investors. This house of cards, known as Shopoff Realty Investments L.P., continues to solicit and recruit unwitting investors who, like Plaintiffs, will learn all too late, that the Shopoffs make promises they cannot keep, sign agreements they do not intend to abide by, and make representations about projects that will not close, all to the detriment of the people they owe the highest duty of care.

2. Plaintiffs bring this lawsuit to enforce promises made in two guaranty agreements (the "Guaranties") against his former employers and fiduciaries to his real estate investments, the Shopoffs.

3. Plaintiffs and the Defendants entered into the Guaranties in consideration of and as an inducement for Plaintiffs to invest in two commercial real estate funds managed by SRI[1], Shopoff Land Fund I ("LFI") and Shopoff Land Fund II ("LFII") through put option agreements (collectively the "Put Option Agreements"). The Put Option Agreements required SI III and SI IV (collectively the "SRI entities") to purchase Plaintiffs' equity from the investments in the Land Funds upon the exercise date of the options.

---

[1] Formerly, "The Shopoff Group."

4. In connection with Plaintiffs' investments, William Shopoff and Cindy Shopoff, principals of SRI, provided Plaintiffs with the Guaranties should the SRI entities default on their obligations under the terms of the Put Option Agreements.

5. With respect to investments in LFI, William Shopoff provided a Guaranty for all obligations of the SRI entities in connection with that investment. For LFII, William Shopoff, individually, with William and Cindy Shopoff as Trustees for the Shopoff Revocable Trust, provided a Guaranty for all obligations of the SRI entities in connection with that investment.

6. Based on these guaranties, Plaintiffs made substantial investments in the Land Funds.

7. To date, the SRI entities have repeatedly breached their obligations under the Put Option Agreements, including multiple revised payment schedules imposed on Plaintiffs by continued threats of non-payment by William Shopoff.

8. As a result of these breaches and failed payments, the Guarantors are obligated to pay all unpaid obligations, including all late fees, as well as all costs and attorneys' fees incurred due to non-payment and recovery. The Guarantors have repeatedly defaulted on these obligations and have demonstrated that they never intended to follow through with these obligations.

9. Plaintiffs bring this lawsuit to recover these damages from the Guarantors, who have breached their duties under the Guarantees.

## PARTIES

10. Plaintiff DP Investors III, LLC is a New York formed, New Jersey based Delaware limited liability company owned and controlled by David Placek.

11. Plaintiff DP SLF II Member, LLC is a New York formed, New Jersey based Delaware limited liability company owned and controlled by David Placek.

12. Plaintiff David Placek is an individual who resides in Montclair, NJ 07042.

13. Defendant William Shopoff is an individual who resides at 150 Mountain Road Laguna Beach, CA 92651.

14. Defendant Cindy Shopoff is an individual who resides at 150 Mountain Road Laguna Beach, CA 92651.

Complaint and Jury Trial Demand

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), as the Defendant resides there.

**SPECIFIC FACTUAL ALLEGATIONS**

**A.      Placek Invested in LFI and SRI Defaulted on its Payment Obligations**

17.     David Placek was employed by SRI from July 2012 until February 2018, as Executive Vice President, responsible for pursuing income-producing real estate opportunities in support of SRI's commercial real estate business.

18.     Shortly after he became employed by SRI, William Shopoff approached Placek about an investment opportunity to purchase a limited partnership interest in the LFI, with a put option to sell the interest upon the sale of a large-scale commercial project known as the "Uptown-Newton Project."  Based on Mr. Shopoff's representations about the benefits of this opportunity, Placek accepted the invitation to invest in LFI.

19.     Placek formed DP SLFI, with other investors, and DP Investors III for purposes of investing in LFI.  DP SLF I and DP Investors III entered into Limited Partnership Put Agreements (collectively, "LFI Put Agreements") with SI III in October 2012 for the investment of $5.9 million in LFI – (i) Limited Partnership Agreement Put Agreement between DP SLFI, LLC and SI III ("DP SLFI Agreement"), attached hereto as Exhibit A; and (ii) Limited Partnership Put Agreement between DP Investors III, LLC and SI III ("Investors III Agreement"), attached hereto as Exhibit B.

20.     Both the DP SLFI Agreement and Investors III Agreement were executed on October 18, 2012 and the aggregate contribution under the two agreements was $5.9 million.

21.     The Investors III Agreement had put options, which permitted Plaintiffs DP Investors III to sell its interest in LFI for an amount based upon the exercise date.  Plaintiffs DP Investors III timely exercised under the Investors III Agreement.

22.     Pursuant to the Investors III Agreement, SI III was required to pay DP Investors III according to the following schedule: (i) $368,755.00 on September 30, 2014; (ii) $1,253,758.00 on September 30, 2015; (iii) $1,253,758.00 on September 30, 2016; and, (iv) $1,253,758.00 on September 30, 2017.

23.     After making a partial payment on the first installment, SRI defaulted on the remainder, including the subsequent installment in 2015.  SRI's failure to comply with its obligations under the Investors III Agreement forced Placek, on behalf of Investors III, to renegotiate the payment schedule, with the expectation that SRI would make the required payments.

24.     Placek agreed to revise the payment schedule based on false assurances by Shopoff that he would be able to meet the payment obligations, and misrepresentations about future transactions that would be closing, which would allow him to meet the payments.

25.     For example, in April 2017, Shopoff represented to Placek that two specific projects, "Uptown Lot 1" and the refinancing of "SkyPointe," would provide Shopoff funds to pay Placek according to the revised schedule. Shopoff also represented to Placek that new acquisitions would be forthcoming, as well as asset management and acquisition fees, which would allow him to meet his payment obligations.

26.     Shopoff made these representations with the intention of causing Placek to rely on them, and subsequently to agree to the revised payment schedule.

27.     Accordingly, by letter agreement dated May 1, 2017, attached hereto as Exhibit C, the parties agreed to a revised payment schedule, which required the following payments:

| 5/1/2017 | $250,000 |
|----------|----------|
| 6/1/2017 | $250.000 |
| 7/1/2017 | $250,000 |
| 8/1/2017 | $250,000 |
| 9/1/2017 | $250,000 |

| 9/30/2017 | $1,253,748 |
|-----------|------------|
| 10/1/2017 | $250,000 |
| 11/1/2017 | $250,000 |
| 12/1/2017 | $250,000 |
| 1/1/2018 | $250,000 |
| 2/1/2018 | $250,000 |
| 3/1/2018 | $250,000 |
| 4/1/2018 | $562,965 |

28.     SI III, controlled by Defendants as its principals, repeatedly missed several of these payments too, forcing Placek, on behalf of DP Investors III, to once again renegotiate a payment schedule. Placek again agreed to revise the payment schedule based on false assurances by the Shopoffs that they would be able to meet the payment due to deals that he claimed were in SI III's pipeline.  For example, in August 2017, Shopoff represented to Placek that $750,000 would be paid upon the admission of a new member to an entity Shopoff controlled, TSG-Venture 1.  This was a lie designed to induce Placek to agree to a further protracted payment schedule, that relieved Shopoff of his serious cash flow constraints.

29.     Specifically, Shopoff informed Placek that the investor would be admitted in October 2017. During October 2017, Shopoff informed Placek the Member would be admitted in November 2017.  On multiple occasions during November 2017, Shopoff informed Placek the admission was imminent.  On November 21, 2017 Shopoff informed Placek the admission of the Member should be coming the following week. On December 13, 2017 Placek learned through a Shopoff employee the member closed on the investment into TSG-Venture 1, LLC. Placek reached out to Shopoff via text, email and phone on December 13, December 14, and December 15 with no response.

30.     After avoiding Placek for several days, on December 17, 2017, Shopoff informed Placek that he would not be sending $750,000, and instead would send $25,000 with the remainder to be paid in multiple installments upon deal closings or other milestone dates.  Shopoff, of course, only made a few of

Complaint and Jury Trial Demand

these payments, but proceeded to default on the installments due upon the closing of a property known as El Monte (Brookside) and milestone date of March 31, 2018.

31.    In a letter agreement dated November 19, 2017, but signed at the end of December 2017 (Shopoff insisted on the letter being backdated by approximately 30 days for reasons unknown to Plaintiffs at this time), attached hereto as Exhibit D, the parties agreed to the following second amended schedule:

| | |
|---|---|
| 12/29/2017 | $200,000 |
| 1/5/2018 | $35,000 |
| 2/5/2018 | $35,000 |
| 3/5/2018 | $70,000 |
| 4/5/2018 | $35,000 |
| 5/5/2018 | $35,000 |
| 6/5/2018 | $35,000 |
| 7/5/2018 | $35,000 |
| 8/5/2018 | $35,000 |
| 9/5/2018 | $35,000 |
| 10/5/2018 | $2,400,000 |

32.    SI III made payments on the second revised payment schedule through April 5, 2018, but began defaulting on its obligations again, starting on May 5, 2018.  SI III has failed to make each of the remaining payments under the revised agreement, with missed payments totaling $2,575,000 to date.

33.    In addition to the revised schedule, and as an inducement to agree to the amended payment obligations, SI III agreed to pay DP Investors III $250,000 upon the sale of a large commercial real estate

Complaint and Jury Trial Demand

project, El Monte (Brookside) and $275,000 upon the sale of another commercial real estate project, Groves.  Under the agreement, those payments were to be made no later than March 31, 2018.  SI III defaulted on these obligations as well.

34.     Shopoff also agreed, as consideration for Placek's agreement to modify Shopoff's payment obligations, to pay Placek $565,000, payable in interests in a new residential real estate project known as TSG Venture I, LLC, aka Uptown ("TSG Ventures I").  To date, Shopoff has specifically refused to make this payment or convert these interests, despite his agreement to do so.

35.     The November 17, 2018 revised agreement also included late fees and interest on defaulted payments, which included: (1) a late payment fee of $3,000, plus (2) $50.00 per day until the delinquent payment is made, but upon the third missed payment, $500.00 per day.  On the final payment for $2,400,000 due on October 5, 2018, if SI III failed to pay DP Investors III, the agreement required SI III to pay a $50,000 late payment fee and 12% per year until the payment was made.

36.     Despite Shopoff's repeated representations that the El Monte and the Groves projects would close in January 2018 and March 2018 respectively, neither of those projects closed on those dates.  Shopoff made these representations as an inducement to Placek's agreement to extend out the pay structure, knowing full well that those deals would not close by those dates.

37.     This tactic is commonly employed by Shopoff with his investors as a means to restructure agreements to relieve his own cash flow deficits.  As one Shopoff executive conceded to Placek in connection with his request for payment under the agreements, "That's the problem.  I have stopped believing of money coming in.  I'm told [by Shopoff] it's certain but I'm told that all the time.  Parcel 1 has been closing 'next week' since the day I started in April!"

38.     In truth, the Shopoffs and the entities they control do not have the financial capability of making these payments and make repeated promises to their many creditors based on future deals.  In many cases, as certain deals close, the Shopoffs pay off the highest risk creditors, promising the others more money if they modify their agreements and wait for deals in their purported pipeline.  This occurred repeatedly throughout Plaintiffs' relationship with the Shopoffs, and this conduct continues to this day.

**B.  LFI Payments Guaranteed by William Shopoff**

39.     In connection with the Investors III Agreement, Defendant William Shopoff, individually, provided a Guaranty to DP SLFI and DP Investors III, executed on October 18, 2012, (the "Investors III Guaranty"), attached hereto as Exhibit E.  The Investors III Guaranty provides broad protections to DP Investors III in the event of default by SI III.

40.     Specifically, William Shopoff guaranteed "all amounts which are due and payable under the [Investors III Agreement], when and as required under the [Investors III Agreement], and attorneys' fees, expenses and court costs (whether incurred in connection with any enforcement activities by Placek or otherwise, in any appeal proceedings or in any bankruptcy proceedings involving Investors III or Guarantor)."  *See* Exhibit E, Section 1.1.

41.     Further, any failure by SI III to perform obligated Shopoff to perform on its behalf.

42.     Under the Investors III Guaranty, William Shopoff waived all rights to require DP Investors III to proceed against SI III first, and specifically allowed DP Investors III to maintain an action upon the Guaranty "whether or not action is brought against [SI III] and whether or not [SI III] is joined in any such action."  *See* Exhibit E, Sections 4.3 and 4.4.

43.     Finally, the Investors III Guaranty provides for costs and attorneys' fees for "any effort to enforce any terms of" it, regardless of which party prevails.  *See* Exhibit E, Section 13.

44.     Shopoff, as Guarantor of the LFI agreements, has not made any payments to Placek.

45.     To date, William Shopoff, as Guarantor for all obligations of SI III under these agreements, owes DP Investors III $3,100,000, excluding interest and late fees which increase each day.

**C.  Placek Invested in LFII and SI IV Defaulted on its Obligations**

46.     Following the closing of the Shopoff Land Fund I transaction in or around February 2014, Placek agreed to invest in another SRI fund, LFII, through agreements with another SRI entity, SI IV.

47.     Like the LFI investment, the LFII investment was broken down into two agreements: (i) Limited Partnership Put Agreement between DP SLF II, LLC and SI IV ("DP SLF II Agreement"), attached hereto as Exhibit F; and (ii) Limited Partnership Put Agreement between DP SLF II Member and SI IV ("Member Agreement"), attached hereto as Exhibit G.

48.     Pursuant to the DP SLF II Agreement, DP SLF II contributed $3,501,450 to LFII in exchange for a put option in which Shopoff Investors IV, LLC was required to purchase DP SLF II's interest in the Shopoff Land Fund II for $6,050,506.

49.     Additionally, pursuant to the Member Agreement, DP SLF II Member contributed $499,410 in the LFII in exchange for a put option ("Member Put Option")/call option ("Member Call Option").  The Member Put Option required SI IV to pay Placek a purchase price of $1,498,230 (the "Purchase Price") on the seventh anniversary of the funding date, if timely exercised, minus any distributions made pursuant to DP SLF II Member's interest.  The Member Call Option required SI IV to pay Placek the Purchase Price, minus any distributions and subject to a discount rate of 20% per year depending on the timing of the exercise date.

50.     In connection with and in lieu of this payment, Shopoff requested that Placek agree to exchange his right to exercise the put option for interests in the residential real estate project known as TSG Ventures I as well as a $400,000 payment as consideration.  The value of the TSG Ventures I interest would be based on the Purchase Price.  Shopoff has specifically refused to make this conversion, in breach of this agreement, despite Placek's agreement to once again amend an obligation that Shopoff could not meet.

51.     The Member Agreement also required Shopoff Investors IV, LLC to pay DP SLF II Member according to the following schedule: (i) $90,000 on the funding date; (ii) $155,000 no later than June 30, 2014; and (iii) $250,000 for seven consecutive years on the anniversary of the funding date (April 15), totaling $1.75 million.

52.     SI IV has made only one of these payments in full on April 15, 2015. SI IV has paid only part of the 2016 payment, has entirely neglected to make the 2017 and the 2018 payment.

53.     William Shopoff has confirmed that SI IV will no longer be making any payments under the Member Agreement.

54.     To date, SI IV, controlled by SRI and William Shopoff, owes DP LFII Member $625,000, excluding interest and late fees.

**D.  LFII Payments Guaranteed by William Shopoff and The Shopoff Revocable Trust**

55.     Pursuant to a guaranty agreement ("Investors IV Guaranty") William Shopoff, individually, and William Shopoff and Cindy Shopoff, as Trustees for the Shopoff Revocable Trust, guaranteed all SI IV obligations under the Member Agreement, including all amounts due upon default by Shopoff Investors IV, L.P. *See* Investors IV Guaranty, attached hereto as Exhibit H, Section 1.1.

56.     As with the Investors III Guaranty, the Investors IV Guaranty required its Guarantors to pay "all amounts which are due and payable under the [Member Agreement], when and as required under the [Member Agreement], and attorneys' fees, expenses and court costs (whether incurred in connection with any enforcement activities by Placek or otherwise, in any appeal proceedings or in any bankruptcy proceedings involving DP SLF II Member or Guarantor)."

57.     Additionally, the Guaranty entitled DP SLF II Member to costs and attorneys' fees for "any effort to enforce the terms of" the Guaranty, regardless of which party prevails.  *See* Exhibit H, Section 13.

58.     This Guaranty also provided that Placek could maintain an independent action against Shopoff, individually, and against William and Cindy as Trustees, irrespective of whether Placek pursued an action against SI IV.  *See* Exhibit H, Section 4.4.

59.     Accordingly, pursuant to the terms of the Investors IV Guaranty, William Shopoff and the Shopoff Revocable Trust, through William and Cindy Shopoff as Trustees, must pay DP SLF II Member at least $1,498,230 and $1,375,000 under the Member Agreement.

**E.  The Shopoffs Never Intended to Comply with the Sham Guaranties**

60.     On October 18, 2012, William Shopoff falsely agreed to enter into a guaranty of the payments to DP Investors III in order to induce Placek to invest in LFI.

61.     Similarly, on April 4, 2014, William and Cindy Shopoff, on behalf of the Shopoff Revocable Trust, falsely agreed to enter into a guaranty of payments to DP SLF II Member in order to induce Placek to invest in LFII.

62.     Thus, as both agreements stated that the Shopoffs would pay "all amounts which are due and payable under the [Put Option Agreements]," in the event of default by both entities that they control, this was false.

63.     The Shopoffs had no intention of complying with those agreements, but agreed to include them as part of these investments to provide false security for the investments.

64.     As they have done continuously in connection with the underlying agreements, both with Plaintiffs as well as their other investors, the Shopoffs included the sham guaranties on the Put Option Agreements to induce Placek to enter into those agreements.

65.     Plaintiffs relied on these false guaranties to their substantial detriment.

## CLAIMS FOR RELIEF

### COUNT I

**Breach of Investors III Guaranty**
**(Shopoff)**

66.     Plaintiff repeats and incorporates by reference the allegations above as if fully contained herein.

67.     Defendants William Shopoff executed a valid guaranty in favor of DP Investors III which required William Shopoff to pay all obligations due to DP Investors III under the Investors III Agreement in the event of default by SI III.

68.     SI III has defaulted on its obligations to Placek.

69.     Because SI III failed to make the required payments, the Investors III Guaranty described in the preceding paragraphs triggered William Shopoff's obligation to make those payments due to DP Investors III by SI III.

70.     William Shopoff has failed to make these required payments.

71.     As a direct and proximate result of Defendants William Shopoff's breach of the Investors III Guaranty, DP Investors III has suffered and will continue to suffer damages in an amount to be proven at trial but estimated to be in excess of $3,665,000, plus late fees, interest, costs, and attorneys' fees.

### COUNT II

**Breach of Investors IV Guaranty**
**(William Shopoff and the Shopoff Revocable Trust)**

72.     Plaintiff DP SLF II Member repeats and incorporates by reference the allegations above as if fully contained herein.

---

12

Complaint and Jury Trial Demand

73.     Defendants William Shopoff, individually, and William and Cindy Shopoff, as Trustees for the Shopoff Revocable Trust, executed a valid guaranty in favor of DP SLF II Member which required them to pay all obligations due to DP SLF II Member under the Member Agreement in the event of default by SI IV.

74.     SI IV defaulted on payments under the Member Agreement.

75.     Because SI IV failed to make the required payments, the Investors IV Guaranty described in the preceding paragraphs triggered William Shopoff's and the Shopoff Revocable Trust's obligation to make those payments due to DP SLF Member by SI IV.

76.     William Shopoff individually and William and Cindy Shopoff as Trustees for the Shopoff Revocable Trust have failed to make these required payments.

77.     As a direct and proximate result the breach by Defendant William Shopoff, individually, and William and Cindy Shopoff, as Trustees for the Shopoff Revocable Trust, of the Investors IV Guaranty, DP SLF II Member has suffered and will continue to suffer damages in an amount to be proven at trial but estimated to be in excess of $585,895, plus penalties, interest, costs, and attorneys' fees.

## COUNT III

### Specific Performance
### (Against William Shopoff and the Shopoff Revocable Trust)

78.     Plaintiff DP SLF II Member repeats and incorporates by reference the allegations above as if fully contained herein.

79.     Defendants William Shopoff individually and William and Cindy Shopoff, as Trustees for the Shopoff Revocable Trust, executed a Guaranty in favor of DP SLF II Member.

80.     Under the terms of the Investors IV Guaranty, in the event that SI IV fails to pay DP SLF II Member in connection with the Members Agreement, Defendants are obligated to pay DP SLF II Member $250,000 for seven years through April 2021 for each year in which SI IV fails to make the requisite payments.

81.     DP SLF II Member has performed all conditions, covenants, and promises required by it on its part to be performed in accordance with the terms and conditions of the contract.

82.     Shopoff Investors IV L.P. failed to make the full $250,000.00 payment in 2016, failed to make any payment in 2017 or 2018, and will likely fail to make any payments due in the years 2018 through 2021.

83.     As such, Defendants William Shopoff individually and William and Cindy Shopoff, as Trustees for the Shopoff Revocable Trust are obligated to pay DP SLF II Member, LLC $250,000.00 for fiscal years 2016 through 2021.

84.     DP SLF Member seeks an order requiring the Guarantors to make payment due to DP SLF II Member pursuant to the Investors IV Guaranty.

## COUNT IV

### Breach of The Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

85.     Plaintiffs repeat and incorporate by reference the allegations above as if fully contained herein.

86.     As contracting parties to various agreements described in the preceding paragraphs, Defendants had a duty to act in good faith and to deal with Plaintiff fairly.

87.     Defendants breached the duty to act in good faith and to deal with Plaintiffs by making representations and/or promises that Defendants knew were false and/or had no intention of keeping.

88.     Plaintiffs reasonably and justifiably relied on Defendants' representations and/or promises.

89.     As a direct and proximate result of Defendants' breach, Plaintiffs have been, and continue to be, damaged and harmed.

### COUNT IV

### Fraud
### (All Defendants)

90.     Plaintiffs repeat and incorporate by reference the allegations above as if fully contained herein.

91.     The Shopoffs individually and as Guarantors, made misrepresentations about their ability and intention to make payments in connection with Plaintiffs' investments in LFI and LFII, and made misrepresentations in connection with their intention to Guaranty those payments.

Complaint and Jury Trial Demand

92.     Individually, the Shopoffs stated to Plaintiffs on repeated occasions that they would make payments through investments made in the LFI and LFII, on behalf of SI III and SI IV, and that certain transactions would close and result in sufficient income to meet their payment obligations.

93.     As Guarantors, and on behalf of the trust, the Shopoffs each made representations about their intention to Guaranty any defaulted obligations of SI III and SI IV.

94.     The Shopoffs made these representations with the intent to induce Plaintiffs to agree to invest in the Land Funds, but knew at the time that they made them, that the representations were false.

95.     Plaintiffs relied on these misrepresentations and invested in LFI and LFII.

96.     As a direct and proximate result of Defendants' fraud, Plaintiffs have been, and continue to be, damaged and harmed.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

   a.   Judgement in the amount of $6,538,230, plus interest and late fees;

   b.   Additional consequential, incidental, and punitive damages;

   c.   Default, pre-judgment and post-judgment interest;

   d.   Reasonable attorney's fees

   e.   An order requiring Defendants William and Cindy Shopoff, as Trustees for the Shopoff Revocable Trust, to make payments due through fiscal year 2021 pursuant to the Members Agreement; and

   f.   for such other relief as the Court deems just and proper.

## CERTIFICATION AND CLOSING

   Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint:  (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified,

will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: December 10, 2018

Respectfully submitted,

CONNOR, FLETCHER & HEDENKAMP LLP

By: _Matthew Fletcher_
Matthew J. Fletcher
*Attorneys for Plaintiffs*

Complaint and Jury Trial Demand

# EXHIBIT A

CAUTION: ~~THIS DOCUMENT HAS NOT BEEN REVIEWED FOR REDACTIONS AND MAY CONTAIN~~ (county clerk law.) Page 18 of 71

Case 8:18-cv-02187-DOC-JDE Document 1 Filed 12/10/18 Page 18 of 71 Page ID #:18

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 8

RECEIVED NYSCEF: 04/09/2018

LIMITED PARTNERSHIP PUT AGREEMENT
(Shopoff Land Fund I, L.P.)

This Limited Partnership Put Agreement (this *"Agreement"*) is entered into by and between **DP SLFI, LLC**, a Delaware limited liability company (*"DP SLFI"*), and **SHOPOFF INVESTORS III, L.P.**, a Delaware limited partnership (*"Investors III"*), and is dated as of October 18, 2012 (the *"Effective Date"*), with respect to the following:

**RECITALS:**

A.      DP SLFI has agreed to contribute, at the times specified in this Agreement, capital (*"DP SLFI's Land Fund Capital Contribution"*) to Shopoff Land Fund I, L.P., a Delaware limited partnership (the *"Land Fund Partnership"*), in an amount which is undetermined as of the date hereof but which shall be not less than Two Million Five Hundred Thousand Dollars ($2,500,000) or more than Six Million Five Hundred Thousand Dollars ($6,500,000), and by reason thereof is being admitted as a limited partner of the Land Fund Partnership. The limited partnership interest being acquired by DP SLFI shall hereinafter be referred to as *"DP SLFI's LP Interest"*.

B.      The Land Fund Partnership is a limited partner of TSG – Newport, L.P., a Delaware limited partnership (*"TSG Newport"*). TSG Newport is a limited partner of Uptown Newport, L.P., a Delaware limited partnership (*"Uptown Newport"*). Uptown Newport's principal asset is approximately 25 acres of improved land located at 4311 and 4321 Jamboree Road in Newport Beach, California (the *"Project"*). Uptown is processing entitlements to re-develop the Project in two phases as a mixed use, residential/retail development, the first phase of which will cover that portion of the Project located at 4311 Jamboree Road (and commonly referred to as the Half Dome building and ancillary exterior areas of the Project).

C.      Investors III is the general partner of TSG Newport and the general partner of the Land Fund Partnership. As an inducement to DP SLFI to invest in the Land Fund Partnership and acquire DP SLFI's LP Interest, without which DP SLFI would not have agreed to invest in the Land Fund Partnership, Investors III has agreed to grant to DP SLFI a put option (the *"Put Option"*) by which, at DP SLFI's election, Investors III will be obligated to purchase (or cause an affiliate of Investors III to purchase) DP SLFI's LP Interest at a price and under the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the foregoing, and the mutual covenants of the parties herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Put Option.

a. Subject to the satisfaction of the condition set forth in Section 1.b. below, Investors III hereby grants the Put Option to DP SLFI. DP SLFI may exercise the Put Option by written notice to Investors III on or before the earlier to occur of: (1) if a Put Event (as hereinafter defined) has not occurred on or prior to September 30, 2014, then on September 30, 2014, or (2) ten (10) days following the consummation of a direct or indirect (i) sale or financing of, (ii) conveyance of a participatory interest in, or (iii) other

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

capital event relating to, the Project or any portion thereof, provided any of which events in the aggregate generates not less than $250,000.00 of revenue to the Land Fund Partnership and/or Investors III (each, a *"Put Event"*). Investors III shall provide DP SLFI with written notice thereof (a *"Put Event Notice"*) immediately upon its occurrence, with a reasonably detailed explanation of the nature of the Put Event. At any time prior to the earlier of <u>September 30, 2014</u> (if a Put Event has not occurred on or prior to such date) or ten (10) days following DP SLFI's receipt of a Put Event Notice from Investors III, DP SLFI shall have the right (but not the obligation) to exercise its Put Option by delivery to Investors III of a written notice (the *"Put Exercise Notice"*). Upon DP SLFI's timely exercise of the Put Option, Investors III shall be obligated to purchase DP SLFI's LP Interest for the price and upon the terms set forth herein. If DP SLFI does not deliver a Put Exercise Notice by the earlier of <u>September 30, 2014</u> (if a Put Event has not occurred on or prior to such date) or ten (10) days following DP SLFI's receipt of the Put Event Notice, the Put Option shall terminate and neither party shall have any further obligation hereunder.

b.   The Put Option shall become effective only if DP SLFI contributes not less than Two Million Five Hundred Thousand Dollars ($2,500,000), of which:

i.   Nine Hundred Seventy-One Thousand Dollars ($971,000.00) is being contributed concurrently with the execution of this Agreement; and

ii.   the remaining amount must be contributed on or before <u>October 31, 2012</u>.

The acceptance of any funds later than the dates set forth above shall be subject to written approval by Investors III in its sole discretion, failing which, such funds shall not become a part of DP SLFI's Land Fund Capital Contribution and shall be returned to DP SLFI. If DP SLFI fails to contribute at least Two Million Five Hundred Thousand Dollars ($2,500,000), this Agreement, at Investors III's election shall terminate upon written notice from Investors III to DP SLFI. DP SLFI's Land Fund Capital Contribution shall in no event exceed Six Million Five Hundred Thousand Dollars ($6,500,000) without the written consent of Investors III, in Investors III's sole discretion.

2.   <u>Purchase Price</u>. The purchase price for DP SLFI's LP Interest (the *"Purchase Price"*) shall be determined as follows:

a.   If (i) the Put Event occurs <u>*on or before December 31, 2013*</u>, (ii) DP SLFI's Land Fund Capital Contribution is <u>*less than*</u> Five Million Dollars ($5,000,000), and (iii) DP SLFI timely exercises the Put Option, the Purchase Price shall equal One Hundred Thirty-Five Percent (135%) of DP SLFI's Land Fund Capital Contribution.

b.   If (i) the Put Event occurs <u>*on or before December 31, 2013*</u>, (ii) DP SLFI's Land Fund Capital Contribution is <u>*equal to or greater than*</u> Five Million Dollars ($5,000,000), and (iii) DP SLFI timely exercises the Put Option, then the Purchase Price shall equal One Hundred Forty-Five Percent (145%) of DP SLFI's Land Fund Capital Contribution.

c.   If (i) the Put Event occurs <u>*after December 31, 2013 and on or before September 30, 2014*</u>, (ii) DP SLFI's Land Fund Capital Contribution is <u>*less than, equal to or greater than*</u> Five Million

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Dollars ($5,000,000), and (iii) DP SLFI timely exercises the Put Option, then the Purchase Price shall equal One Hundred Sixty Percent (160%) of DP SLFI's Land Fund Capital Contribution.

      d.    If (i) the Put Event does not occur *on or before September 30, 2014*, (ii) DP SLFI's Land Fund Capital Contribution is *less than* Five Million Dollars ($5,000,000), and (iii) DP SLFI timely exercises the Put Option, then the Purchase Price shall equal One Hundred Thirty-Five Percent (135%) of DP SLFI's Land Fund Capital Contribution.

      e.    If (i) the Put Event does not occur *on or before September 30, 2014*, (ii) DP SLFI's Land Fund Capital Contribution is *equal to or greater than* Five Million Dollars ($5,000,000), and (iii) DP SLFI timely exercises the Put Option, then the Purchase Price shall equal One Hundred Forty Percent (140%) of DP SLFI's Land Fund Capital Contribution.

      3.    <u>Payment of Purchase Price; Closing</u>.

      a.    <u>Payment of Purchase Price</u>. If DP SLFI timely exercises the Put Option, the Purchase Price shall be paid to DP SLFI in all cash either: (1) on <u>September 30, 2014</u>, if a Put Event has not occurred by <u>September 30, 2014</u>, or (2) within ten (10) business days of the date that TSG – Newport receives its distribution from Uptown Newport representing TSG Newport's allocable share of net proceeds from a Put Event, if a Put Event occurs on or before <u>September 30, 2014</u>.

      b.    <u>Closing</u>. On the date DP SLFI receives the Purchase Price (the *"Closing Date"*), DP SLFI shall execute an assignment (which shall be on commercially reasonable terms) of DP SLFI's LP Interest by which DP SLFI shall assign to Investors III, all right, title and interest in and to DP SLFI's LP Interest, and shall withdraw as a limited partner of the Land Fund Partnership, and agrees to execute and deliver to Investors III such other reasonable customary documentation evidencing or confirming DP SLFI's withdrawal from the Land Fund Partnership. DP SLFI agrees from time to time thereafter, at the request of Shopoff, to acknowledge in writing (on commercially reasonable terms) his withdrawal from the Partnership.

      4.    <u>Clear Title</u>. On the Closing Date, DP SLFI's transfer and assignment of DP SLFI's LP Interest to Investors III (or designated nominee) by written instrument executed by DP SLFI; said transfer shall be free and clear of any third-party claims. During the period of DP SLFI's ownership of DP SLFI's LP Interest, DP SLFI shall not sell, assign, encumber or hypothecate any portion of DP SLFI's LP Interest.

      5.    <u>Covenants, Representations and Warranties</u>.

      5.1    <u>Covenants, Representations and Warranties of Investors III</u>. Investors III hereby represents, warrants and covenants to DP SLFI as to the following:

      a.    <u>No Litigation</u>. There is no action or proceeding or governmental investigation pending, or to the best knowledge of Investors III, threatened, against or relating to (i) this transaction, (ii) the Land Fund Partnership, (iii) TSG Newport, (iv) Uptown Newport or (v) Investors III, which would affect DP SLFI or prevent the consummation of the Put Option, if exercised by DP SLFI.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

RECEIVED NYSCEF: 04/09/2018

b.  <u>Due Formation; Conduct of Business</u>. (i) The Land Fund Partnership, (ii) TSG Newport, (iii) Uptown Newport and (iv) Investors III is each (a) a limited partnership duly organized, validly existing and in good standing in the State of its formation, (b) is entitled to own its property and to carry on its business in the state(s) in which it conducts its business.

c.  <u>Authorization of Agreement</u>. The execution and performance of this Agreement have been duly authorized by all necessary partnership action, and the execution and performance of this Agreement (including, without limitation, the exercise of the Put Option) will not violate any term of Investors III's or the Land Fund Partnership's certificate of limited partnership, partnership agreement, or any other agreement, judicial decree, statute or regulation to which Investors III or the Land Fund Partnership is a party.

d.  <u>Consummation of Transactions by Investors III</u>. Investors III has, or shall have at the appropriate time, sufficient assets to satisfy its obligations set forth in this Agreement, including, without limitation, the consummation of acquisition under the Put Option, and has, and shall incur, no liabilities in excess of $1,000,000.00 or other encumbrances which shall prevent Investors III from satisfying its obligations under this Agreement. Further, Investors III shall not pledge more than 7.5% (in terms of a percentage interest) of Investors III's assets to entities not controlled by William A. Shopoff.

e.  <u>Distributions of Put Event Proceeds</u>. Following a Put Event, (i) Investors III is authorized to distribute to the partners of TSG Newport their respective shares of the proceeds of such Put Event following TSG Newport's receipt of such funds; and (ii) Investors III is authorized to distribute to its partners their share of the proceeds of such Put Event.

f.  <u>No Other Adverse Facts</u>. There are no facts known to Investors III, other than any facts which have been disclosed to DP SLFI in writing, which might have a material adverse effect on the transactions contemplated in this Agreement, including, without limitation, the exercise and consummation of the Put Option, and no representation or warranty made by Investors III in this Agreement, in any exhibit attached hereto, or in any letter or certificate furnished to DP SLFI pursuant to the terms of this Agreement, each of which is incorporated herein by reference and made a part hereof, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

g.  <u>Consents and Approvals</u>. There are no consents or approvals of any third persons, or any federal, state or local governmental authorities, including, without limitation, any internal board of directors or other approval process, that are required in connection with the performance by Investors III of its obligations under this Agreement.

h.  <u>Amendment of Organization Documents; Other Actions</u>. The certificate of limited partnership and limited partnership agreement of (i) The Land Fund Partnership, (ii) TSG Newport and (iii) Investors III shall not be amended in a manner, and such entities shall

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

take no action, which shall materially and adversely affect the transactions described in this Agreement, including, without limitation, the consummation of the Put Option.

5.2.    Representations and Warranties of DP SLFI. DP SLFI represents and warrants to Investors III that (a) DP SLFI is a limited liability company duly formed and validly existing in the State of Delaware, entitled to own its property and to carry on its business in the state of Delaware, (b) DP SLFI has duly authorized the execution and performance of this Agreement, and (c) the execution and performance of this Agreement will not violate any term of DP SLFI's certificate of formation or operating agreement, or any other agreement, judicial decree, statute or regulation to which DP SLFI is a party or by which DP SLFI may be bound or affected.

5.3.    Materiality. Investors III acknowledges that each of the representations, warranties, covenants and agreements made by it in Section 5.1 above and elsewhere in this Agreement is material to DP SLFI. DP SLFI acknowledges that each of the representations, warranties, covenants and agreements made by it in Section 5.2 above and elsewhere in this Agreement is material to Investors III.

5.4.    Survival. All of the representations, warranties and covenants of Investors III set forth in this Section 5 and elsewhere in this Agreement shall be true upon the execution of this Agreement, and shall be deemed to be repeated for the duration of the period expiring upon the later to occur of when all of the obligations of Investors III under the Put Option have been satisfied or the Put Option has expired unexercised by DP SLFI.

6.    Guaranty of Obligations of Investors III. DP SLFI and Investors III acknowledge and agree that as a material condition to DP SLFI entering into this Agreement, Investors III shall cause William A. Shopoff to execute and deliver to DP SLFI a Guaranty of Obligations in the form attached hereto as Exhibit A simultaneously with the execution of this Agreement.

7.    Notices. All written notices and demands of any kind which either party may be required or may desire to serve upon the other party in connection with this Agreement may be (a) personally served, (b) served by registered or certified mail (postage pre-paid), (c) sent by facsimile transmission (provided that the original notice or demand is delivered by next day overnight delivery service), or (d) sent by next day overnight delivery service. Any such notice or demand shall be addressed to the parties as listed in this Section 7. Service of any such notice or demand shall be deemed complete upon receipt in the event of personal service, on the third business day after deposit in the U.S. mail if sent via registered or certified mail, upon transmission with a printed confirmation of receipt from the transmitting facsimile machine without notation of error in the event sent via facsimile transmission, and on the next business day if sent via an overnight delivery service with a delivery confirmation, if sent to each party at the address set forth below with the required proper postage:

////

////

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

| To Investors III: | c/o The Shopoff Group, L.P. |
| | 2 Park Plaza, Suite 700 |
| | Irvine, California 92614 |
| | Attn: William A. Shopoff |
| | Telephone: (949) 417-1397 |
| | Facsimile: (949) 417-1399 |
| | |
| | Stevan J. Gromet, Esq. |
| | Gromet & Associates |
| | 114 Pacifica, Suite 250 |
| | Irvine, California 92618 |
| | Telephone: (949) 261-1110 |
| | Facsimile: (949) 261-1818 |
| | |
| To DP SLFI: | DP SLFI, LLC |
| | c/o The Shopoff Group, L.P. |
| | 575 Lexington Avenue, 4th Floor |
| | New York, New York 10022 |
| | Attn: David Placek |
| | Telephone: (212) 906-9410 |
| | Facsimile: (646) 607-9168 |
| | |
| With Copy To: | Wayne R. Landesman, Esq. |
| | D'Agostino, Levine, Landesman & Lederman, LLP |
| | 345 Seventh Avenue, 23rd Floor |
| | New York, New York 10001 |
| | Telephone: (212) 564-9800 |
| | Facsimile: (212) 564-9802 |

8.   <u>Miscellaneous</u>. This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of California, without giving effect to the conflicts of laws principles thereof. The parties consent to jurisdiction and venue in any federal or state court in the County of Orange. This Agreement states the entire agreement and understanding regarding the subject matter hereof and, together with that certain *Limited Partnership Put Agreement (Shopoff Investors III, L.P.)* of even date herewith entered into by and between Investors III and DP Investors III, LLC, a Delaware limited liability company, implements and satisfies in full Section 7 of that certain *Employment Agreement* between David Placek and The Shopoff Group, L.P. dated as of July 10, 2012; to the extent of any inconsistency between the terms set forth in this Agreement and the terms contained in Section 7 of said Employment Agreement, the terms set forth in this Agreement shall control and the inconsistent provisions contained in the Employment Agreement shall be deemed modified to conform to the terms and conditions of this Agreement. This Agreement may be amended only by a written document signed by the parties hereto and both David Placek and The Shopoff Group L.P. No delay or failure to exercise any right under this Agreement waives such rights under this Agreement. If any provision of this

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Agreement is partially or completely invalid or unenforceable, then that provision shall only be ineffective to such extent of its invalidity or unenforceability, and the validity or enforceability of any other provision of this Agreement shall not be affected. Time is of the essence of this Agreement and each provision hereof. Any controversy relating to this Agreement shall be settled by arbitration in Orange County, California in accordance with the Commercial Arbitration Rules of the American Arbitration Association. In the event of any inconsistency between this Agreement and any personnel policy or manual of Company with respect to any matter, this Agreement shall govern the matter.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

SHOPOFF INVESTORS III, L.P.,                    DP SLFI, LLC, a Delaware limited liability
a Delaware limited partnership                  company

By:    The Shopoff Corporation, a Delaware      By:    DP SLFI Member, LLC, a Delaware
       corporation, General Partner                    limited liability company, its Manager

       By: _____            By: _____
           William A. Shopoff, President             David Placek, Manager

For the purposes of acknowledging their agreement to the terms of Section 8 above, the undersigned have executed this Agreement as of the date first set forth above.

_____
DAVID PLACEK

THE SHOPOFF GROUP, L.P., a Delaware limited partnership

By:    TSG GP, LLC, a Delaware limited liability company,
       General Partner

       By: _____
           William A. Shopoff, President

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

# EXHIBIT B

## LIMITED PARTNERSHIP PUT AGREEMENT
### (Shopoff Investors III, L.P.)

This Limited Partnership Put Agreement (this *"Agreement"*) is entered into by and between **DP INVESTORS III, LLC**, a Delaware limited liability company (*"Placek"*), and **SHOPOFF INVESTORS III, L.P.**, a Delaware limited partnership (*"Investors III"*), and is dated as of October 18, 2012 (the *"Effective Date"*), with respect to the following:

### RECITALS:

A.      Concurrently herewith, DP SLFI, LLC (*"DP SLFI"*), an affiliate of Placek, has agreed to contribute, at the times specified in that certain *Limited Partnership Put Agreement (Shopoff Land Fund I, L.P.)* of even date herewith (the *"Land Fund Put Agreement"*), capital (*"DP SLFI's Land Fund Capital Contribution"*) to Shopoff Land Fund I, L.P., a Delaware limited partnership (the *"Land Fund Partnership"*), in an amount which is undetermined as of the date hereof but which shall be not less than Two Million Five Hundred Thousand Dollars ($2,500,000) or more than Six Million Five Hundred Thousand Dollars ($6,500,000), and by reason thereof is being admitted as a limited partner of the Land Fund Partnership. The limited partnership interest being acquired by DP SLFI shall hereinafter be referred to as *"DP SLFI's Land Fund Interest"*.

B.      The Land Fund Partnership is a limited partner of TSG – Newport, L.P., a Delaware limited partnership (*"TSG Newport"*). TSG Newport is a limited partner of Uptown Newport, L.P., a Delaware limited partnership (*"Uptown Newport"*). Uptown Newport's principal asset is approximately 25 acres of improved land located at 4311 and 4321 Jamboree Road in Newport Beach, California (the *"Project"*). Uptown is processing entitlements to re-develop the Project in two phases as a mixed use, residential/retail development, the first phase of which will cover that portion of the Project located at 4311 Jamboree Road (and commonly referred to as the Half Dome building and ancillary exterior areas of the Project).

C.      Investors III is the general partner of TSG Newport and the general partner of the Land Fund Partnership. As an inducement to DP SLFI to invest in the Land Fund Partnership and acquire DP SLFI's Land Fund Interest, without which DP SLFI would not have agreed to invest in the Land Fund Partnership, Investors III has agreed to grant to DP SLFI a put option (the *"Land Fund Put Option"* or the *"Put Option"*) by which, at DP SLFI's election, Investors III will be obligated to purchase (or cause an affiliate of Investors III to purchase) DP SLFI's Land Fund Interest at a price and under the terms and conditions set forth in the Land Fund Put Agreement. Capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings given them in the Land Fund Put Agreement.

D.      As an additional inducement to DP SLFI to invest in the Land Fund Partnership, and for the sum of One Hundred Dollars ($100.00), Investors III has agreed to also admit Placek as a limited partner in Investors III (such limited partnership interest in Investors III being hereinafter referred to as *"Placek's Investors III LP Interest"*), and to enter into this Agreement, by which Investors III will become obligated to purchase Placek's Investors III LP Interest at a price and under the terms and conditions set forth in this Agreement (the *"Investors III Put Option"*).

NOW THEREFORE, in consideration of the foregoing, and the mutual covenants of the parties herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

1.    <u>Put Option</u>. Subject to the Land Fund Put Option becoming effective pursuant to Section 1.b. of the Land Fund Put Agreement, Investors III hereby grants the Investors III Put Option to Placek. The Investors III Put Option shall be deemed exercised by Placek and effective automatically upon the earlier to occur of (i) the date of the Put Event, if the Put Event occurs *on or before* September 30, 2014 *and* Placek has timely exercised the Land Fund Put Option pursuant to the Land Fund Put Agreement, or (ii) September 30, 2014, if the Put Event has not occurred on or before September 30, 2014; provided, however, in no event shall said exercise be deemed to have occurred prior to one (1) year from the Effective Date of this Agreement (i.e., if the Land Fund Put Option is exercised within one (1) year from the effective date of this Agreement, then the Investors III Put Option shall be deemed to have been exercised on the day following the date which is one (1) year from the effective date of this Agreement).

2.    <u>Purchase Price</u>. The purchase price for Placek's Investors III LP Interest (the ***"Purchase Price"***) shall be determined as follows:

a.    If (i) a Put Event (as defined in the Land Fund Put Agreement) occurs *on or before* December 31 2013, (ii) DP SLFI's Land Fund Capital Contribution is *less than* Five Million Dollars ($5,000,000), and (iii) DP SLFI has timely exercised the Put Option, then the Purchase Price shall equal Eighty-Five Percent (85%) of DP SLFI's Land Fund Capital Contribution, *less* any distributions received by Placek from Investors III prior to the Investors III Closing Date (defined below) for Placek's Investors III LP Interest.

b.    If (i) the Put Event occurs *on or before* December 31, 2013, (ii) DP SLFI's Land Fund Capital Contribution is *equal to or greater than* Five Million Dollars ($5,000,000), and (iii) DP SLFI timely exercises the Put Option, then the Purchase Price shall equal Eighty-Five Percent (85%) of DP SLFI's Land Fund Capital Contribution, *less* any distributions received by Placek from Investors III prior to the Investors III Closing Date for Placek's Investors III LP Interest.

c.    If (i) the Put Event occurs *after December 31, 2013 and on or before September 30, 2014*, (ii) DP SLFI's Land Fund Capital Contribution is *less than* Five Million Dollars ($5,000,000), and (iii) DP SLFI timely exercises the Put Option, then the Purchase Price shall equal Sixty Percent (60%) of DP SLFI's Land Fund Capital Contribution, *less* any distributions received by Placek from Investors III prior to the Investors III Closing Date for Placek's Investors III LP Interest.

d.    If (i) the Put Event occurs *after December 31, 2013 and on or before September 30, 2014*, (ii) DP SLFI's Land Fund Capital Contribution is *equal to or greater than* Five Million Dollars ($5,000,000), and (iii) DP SLFI timely exercises the Put Option, then the Purchase Price shall equal Seventy Percent (70%) of DP SLFI's Land Fund Capital Contribution, *less* any distributions received by Placek from Investors III prior to the Investors III Closing Date for Placek's Investors III LP Interest.

e.    If the Put Event does not occur by September 30, 2014, and Placek timely exercises the Land Fund Put Option pursuant to the Land Fund Put Agreement, the Purchase Price for Placek's Investors III LP Interest shall be One Hundred Dollars ($100.00). Further, if the Investors III Put Option is not timely exercised or deemed timely exercised as set forth in <u>Section I</u> above, Investors III shall have the right to the immediate redemption of Placek's Investors III LP Interest upon payment of One Hundred Dollars ($100.00) to Placek (the ***"Redemption Price"***).

3.    <u>Payment of Purchase Price; Closing</u>. If Placek is deemed to have exercised the Investors III Put Option as set forth in <u>Section 1</u> above as the result of a Put Event occurring on or before

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

September 30, 2014, and DP SLFI's timely exercise of the Land Fund Put Option, the applicable Purchase Price (per Section 3 above) shall be paid to Placek in all cash as follows:

      a.    If DP SLFI's Land Fund Capital Contribution is *less than* Five Million Dollars ($5,000,000), and the Put Event occurs *on or before* December 31, 2013, then:

      (1)    Fifty percent (50%) of the applicable Purchase Price shall be paid one (1) year from the "Closing Date" under the Land Fund Put Agreement, but in no event shall such amount be paid later than September 30, 2014; and

      (2)    The remaining Fifty percent (50%) of the Purchase Price shall be paid not later than one (1) year from the date the first payment is to be made under clause (1) above.

      b.    If DP SLFI's Land Fund Capital Contribution is *equal to or greater than* Five Million Dollars ($5,000,000), *and* the Put Event occurs *on or before* December 31, 2013, then:

      (1)    Twenty-five percent (25%) of the applicable Purchase Price shall be paid one (1) year from the "Closing Date" under the Land Fund Put Agreement, but in no event shall such amount be paid later than September 30, 2014;

      (2)    Twenty-five percent (25%) of the applicable Purchase Price shall be paid not later than one (1) year from the date the first payment is to be made under clause (1) above;

      (3)    Twenty-five percent (25%) of the applicable Purchase Price shall be paid not later than two (2) years from the date the first payment is to be made under clause (1) above; and

      (4)    The remaining Twenty-five percent (25%) of the applicable Purchase Price shall be paid not later than three (3) years from the date the first payment is to be made under clause (1) above.

      c.    If DP SLFI's Land Fund Capital Contribution is *less than* Five Million Dollars ($5,000,000), *and* the Put Event occurs *after* December 31, 2013 but *not later than* September 30, 2014, then:

      (1)    Twenty-nine and 1,667/10,000ths percent (29.1667%) of the applicable Purchase Price shall be paid on September 30, 2014; and

      (2)    The remaining Seventy and 8,333/10,000ths percent (70.8333%) of the Purchase Price shall be paid not later than September 30, 2015.

      d.    If DP SLFI's Land Fund Capital Contribution is *equal to or greater than* Five Million Dollars ($5,000,000), *and* the Put Event occurs *after* December 31, 2013 but *not later than* September 30, 2014, then:

      (1)    Eight and 9,287/10,000ths percent (8.9287%) of the applicable Purchase Price shall be paid not later than September 30, 2014;

      (2)    Thirty and 3,571/10,000ths percent (30.3571%) of the applicable Purchase Price shall be paid not later than September 30, 2015;

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

(3)     Thirty and 3,571/10,000ths percent (30.3571%) of the applicable Purchase Price shall be paid not later than September 30, 2016; and

(4)     The remaining Thirty and 3,571/10,000ths percent (30.3571%) of the applicable Purchase Price shall be paid not later than September 30, 2017.

e.     On the date Placek receives the entire Purchase Price or Redemption Price, as applicable (the *"Investors III Closing Date"*), Placek shall execute an assignment (which shall be on commercially reasonable terms) of Placek's Investors III LP Interest by which Placek shall assign to Investors III (in redemption), all right, title and interest in and to Placek's Investors III LP Interest, and shall withdraw as a limited partner of Investors III, and agrees to execute and deliver to Investors III such other reasonable customary documentation evidencing or confirming Placek's withdrawal from Investors III. Placek agrees from time to time thereafter, at the request of Shopoff, to acknowledge in writing (on commercially reasonable terms) Placek's withdrawal from Investors III.

4.     Clear Title. On the Investors III Closing Date, Placek's transfer and assignment (in redemption) of Placek's Investors III LP Interest to Investors III (or designated nominee) by written instrument executed by Placek; said transfer shall be free and clear of any third-party claims. During the period of Placek's ownership of Placek's Investors III LP Interest, Placek shall not sell, assign, encumber or hypothecate any portion of Placek's Investors III LP Interest.

5.     Covenants, Representations and Warranties.

5.1     Covenants, Representations and Warranties of Investors III. Investors III hereby represents, warrants and covenants to Placek as to the following:

a.     No Litigation. There is no action or proceeding or governmental investigation pending, or to the best knowledge of Investors III, threatened, against or relating to (i) this transaction, (ii) the Land Fund Partnership, (iii) TSG Newport, (iv) Uptown Newport or (v) Investors III which would affect Placek or prevent the consummation of the Investors III Put Option, if deemed exercised by Placek.

b.     Due Formation; Conduct of Business. (i) The Land Fund Partnership, (ii) TSG Newport, (iii) Uptown Newport and (iv) Investors III is each (a) a limited partnership duly organized, validly existing and in good standing in the State of its formation, (b) is entitled to own its property and to carry on its business in the state(s) in which it conducts its business.

c.     Authorization of Agreement. The execution and performance of this Agreement have been duly authorized by all necessary partnership action, and the execution and performance of this Agreement (including, without limitation, the exercise of the Investors III Put Option) will not violate any term of Investors III's or the Land Fund Partnership's certificate of limited partnership, partnership agreement, or any other agreement, judicial decree, statute or regulation to which Investors III or the Land Fund Partnership is a party.

d.     Consummation of Transactions by Investors III. Investors III has, or shall have at the appropriate time, sufficient assets to satisfy its obligations set forth in this Agreement, including, without limitation, the consummation of acquisition under the Investors III Put

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Option has, and shall incur, until such time that all obligations of Investors III under the Put Option have been fully satisfied: (1) no liabilities in excess of $1,000,000.00 or other encumbrances which shall prevent Investors III from satisfying its obligations under this Agreement, and (2) Investors III shall not pledge more than 7.5% (in terms of a percentage interest) of Investors III's assets to entities not controlled by William A. Shopoff.

e.    No Other Adverse Facts. There are no facts known to Investors III, other than any facts which have been disclosed to Placek in writing, which might have a material adverse effect on the transactions contemplated in this Agreement, including, without limitation, the exercise and consummation of the Investors III Put Option, and no representation or warranty made by Investors III in this Agreement, in any exhibit attached hereto, or in any letter or certificate furnished to Placek pursuant to the terms of this Agreement, each of which is incorporated herein by reference and made a part hereof, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

f.    Consents and Approvals. There are no consents or approvals of any third persons, or any federal, state or local governmental authorities, including, without limitation, any internal board of directors or other approval process, that are required in connection with the performance by Investors III of its obligations under this Agreement.

g.    Amendment of Organization Documents; Other Actions. The certificate of limited partnership and limited partnership agreement of (i) The Land Fund Partnership, (ii) TSG Newport and (iii) Investors III shall not be amended in a manner, and such entities shall take no action, which shall materially and adversely affect the transactions described in this Agreement, including, without limitation, the consummation of the Land Fund Put Option or the Investors III Put Option.

5.2.    Representations and Warranties of Placek. Placek represents and warrants to Investors III that (a) Placek is a limited liability company duly formed and validly existing in the State of Delaware, entitled to own its property and to carry on its business in the state of Delaware, (b) Placek has duly authorized the execution and performance of this Agreement, and (c) the execution and performance of this Agreement will not violate any term of Placek's certificate of formation or operating agreement, or any other agreement, judicial decree, statute or regulation to which Placek is a party or by which Placek may be bound or affected.

5.3.    Materiality. Investors III acknowledges that each of the representations, warranties, covenants and agreements made by it in Section 5.1 above and elsewhere in this Agreement is material to Placek. Placek acknowledges that each of the representations, warranties, covenants and agreements made by it in Section 5.2 above and elsewhere in this Agreement is material to Investors III.

5.4.    Survival. All of the representations, warranties and covenants of Investors III set forth in this Section 5 and elsewhere in this Agreement shall be true upon the execution of this Agreement, and shall be deemed to be repeated for the duration of the period expiring upon the later to occur of when all of the obligations of Investors III under the Investors III Put Option have been satisfied or the Investors III Put Option has expired unexercised by Placek.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

6.      Guaranty of Obligations of Investors III. Placek and Investors III acknowledge and agree that as a material condition to DP SLFI entering into the Land Fund Put Agreement and Placek entering into this Agreement, Investors III shall cause William A. Shopoff to execute and deliver to Placek a Guaranty of Obligations in the form attached hereto as Exhibit A simultaneously with the execution of this Agreement.

7.      Notices. All written notices and demands of any kind which either party may be required or may desire to serve upon the other party in connection with this Agreement may be (a) personally served, (b) served by registered or certified mail (postage pre-paid), (c) sent by facsimile transmission (provided that the original notice or demand is delivered by next day overnight delivery service), or (d) sent by next day overnight delivery service. Any such notice or demand shall be addressed to the parties as listed in this Section 6. Service of any such notice or demand shall be deemed complete upon receipt in the event of personal service, on the third business day after deposit in the U.S. mail if sent via registered or certified mail, upon transmission with a printed confirmation of receipt from the transmitting facsimile machine without notation of error in the event sent via facsimile transmission, and on the next business day if sent via an overnight delivery service with a delivery confirmation, if sent to each party at the address set forth below with the required proper postage:

| | |
|---|---|
| To Investors III: | c/o The Shopoff Group, L.P.<br>2 Park Plaza, Suite 700<br>Irvine, CA 92614<br>Attn: William A. Shopoff<br>Telephone: (949) 417-1397<br>Facsimile: (949) 417-1399 |
| With a copy to: | Stevan J. Gromet, Esq.<br>Gromet & Associates<br>114 Pacifica, Suite 250<br>Irvine, California 92618<br>Telephone: (949) 261-1110<br>Facsimile: (949) 261-1818 |
| To Placek: | c/o The Shopoff Group, L.P.<br>575 Lexington Avenue, 4th Floor<br>New York, New York 10022<br>Attn: David Placek<br>Telephone: (212) 906-9410<br>Facsimile: (646) 607-9168 |
| With a copy to: | Wayne R. Landesman, Esq.<br>D'Agostino, Levine, Landesman & Lederman, LLP<br>345 Seventh Avenue, 23rd Floor<br>New York, NY 10001<br>Telephone: (212) 564-9800<br>Facsimile: (212) 564-9802 |

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED FOR REDACTIONS AND MAY CONTAIN UNSEALED INFORMATION. Case 8:18-cv-02187-DOC-JDE Document 1 Filed 12/10/18 Page 32 of 71 Page ID #:32

NYSCEF DOC. NO. 9                                                    RECEIVED NYSCEF: 04/09/2018

8.   <u>Miscellaneous</u>. This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of California, without giving effect to the conflicts of laws principles thereof. The parties consent to jurisdiction and venue in any federal or state court in the County of Orange. This Agreement states the entire agreement and understanding regarding the subject matter hereof and, together with the Land Fund Put Agreement, implements and satisfies in all respects Section 7 of that certain *Employment Agreement* between David Placek and The Shopoff Group, L.P. dated as of July 10, 2012; to the extent of any inconsistency between the terms set forth in this Agreement and the terms contained in Section 7 of said Employment Agreement, the terms set forth in this Agreement shall control and the inconsistent provisions contained in the Employment Agreement shall be deemed modified to conform to the terms and conditions of this Agreement. This Agreement may be amended only by a written document signed by the parties hereto and both David Placek and The Shopoff Group, L.P. No delay or failure to exercise any right under this Agreement waives such rights under this Agreement. If any provision of this Agreement is partially or completely invalid or unenforceable, then that provision shall only be ineffective to such extent of its invalidity or unenforceability, and the validity or enforceability of any other provision of this Agreement shall not be affected. Time is of the essence of this Agreement and each provision hereof. Any controversy relating to this Agreement shall be settled by arbitration in Orange County, California in accordance with the Commercial Arbitration Rules of the American Arbitration Association. In the event of any inconsistency between this Agreement and any personnel policy or manual of Company with respect to any matter, this Agreement shall govern the matter.

IN WITNESS WHEREOF, the parties have executed this Limited Partnership Put Agreement as of the date first set forth above.

SHOPOFF INVESTORS III, L.P.,                    DP INVESTORS, III LLC, a Delaware limited
a Delaware limited partnership                  liability company

By:     The Shopoff Corporation, a Delaware      By:     DP SLFI Member, LLC, a Delaware limited
        corporation, General Partner                     liability company

        By:   _____                  By:   _____
              William A. Shopoff, President                     David Placek, Manager

For the purposes of acknowledging their agreement to the terms of Section 8 above, the undersigned have executed this Agreement as of the date first set forth above.

_____
DAVID PLACEK

THE SHOPOFF GROUP, L.P., a California limited partnership

By:     TSG GP, LLC, a Delaware limited liability company

        By:   _____
              William A. Shopoff, President

LIMITED PARTNERSHIP PUT AGREEMENT - INVESTORS III 10-18-2012.DOC                    Page 7 of 7

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5(d)) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

# EXHIBIT C

SHOPOFF INVESTORS III, L.P.
c/o Shopoff Realty Investments, L.P.
2 Park Plaza, Suite 700
Irvine, CA 92614

May 1, 2017

DP SLFI, LLC
DP Investors III, LLC
c/o Shopoff Realty Investments, L.P.
575 Lexington Ave., 4th Floor
New York, NY 10022

Re:  **Agreement for Purchase and Sale of Partnership Interest (Shopoff Land Fund I, L.P.)**

Dear Mr. Placek:

This letter agreement will confirm the agreements and understandings between the undersigned parties concerning that certain *Agreement for Purchase and Sale of Partnership Interest (Shopoff Land Fund I, L.P.)* dated March 21, 2014 (the *"PSA"*) between DP SLFI, LLC, a Delaware limited liability company (*"DP SLFI"*), and Shopoff Investors III, L.P., a Delaware limited partnership (*"SI III"*). The PSA provides that SI III shall pay to DP SLFI a purchase price of Nine Million Four Hundred Forty Thousand Dollars ($9,440,000.00) (the *"Purchase Price"*) for Five Thousand Nine Hundred (5,900) limited partnership units (the *"SLFI Interest"*) in Shopoff Land Fund I, L.P., a Delaware limited partnership (*"SLFI"*), pursuant to DP SLFI's exercise of its put option under that certain *Limited Partnership Put Agreement (Shopoff Land Fund I, L.P.)* dated October 18, 2012 (the *"DP SLFI Put Agreement"*). However, the parties hereby acknowledge and agree that (i) the parties inadvertently left out a reference to that certain *Limited Partnership Put Agreement (Shopoff Investors III, L.P.)* dated October 18, 2012 (the *"DPI III Put Agreement"*) between DP Investors III, LLC, a Delaware limited liability company (*"DPI III"*), and SI III, and the purchase of all of DPI III's limited partnership interest in SI III acquired by DPI III pursuant to the DPI III Put Agreement (the *"SI III Interest"*), and (ii) the PSA should have provided that, and the parties hereto hereby agree that, the Purchase Price is for the purchase of both the SLFI Interest and the SI III Interest. After the parties' execution of the PSA (as corrected and amended hereinabove), the parties entered into an informal arrangement in which SI III would pay the remaining unpaid balance of the Purchase Price in installments with interest accruing at thirty percent (30%) per annum (the *"Interest"*); and as of the date hereof, $3,312,965.00 is due and owing from SI III (the *"Current Amount Due"*), and a final payment of $1,253,748.00 will become due from SI III to DPI III on September 30, 2017.

The undersigned parties now, in consideration of the mutual covenants hereinafter set forth, hereby agree to a different payment arrangement from that of the foregoing, as follows: (A) commencing on May 1, 2017, and thereafter, on the first day of each month (the *"Monthly Payment Due Date"*), SI III shall make monthly payments to DPI III of Two Hundred Fifty Thousand Dollars ($250,000.00) per month (the *"Monthly Payment"*) according to the payment schedule attached hereto as **Exhibit A**, with a final balloon payment of the outstanding amount due on April 1, 2018 (B) immediately upon DP SLFI's receipt of the first (1st) Monthly Payment, any and all interest accruing on any sums comprising the Current Amount Due shall cease until such time that SI III has failed to make a Monthly Payment within seven (7) days of a Monthly Payment Due Date, and in such case, Interest shall accrue at an amount of One Thousand Five Hundred Dollars ($1,500.00) per day until the delinquent Monthly Payment is paid; this amount will be reduced to Five Hundred Dollars ($500.00) per day after the September 30, 2017

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) Case 8:18-cv-02187-DOC-JDE Document 1 Filed 12/10/18 Page 35 of 71 INDEX NO. UNASSIGNED Page ID #:35

NYSCEF DOC. NO. 11                                                                          RECEIVED NYSCEF: 04/09/2018

Mr. David Placek
May 1, 2017
Page 2 of 3

payment and all prior payment and all other payments are paid in full and (C) on September 30, 2017, in addition to the Monthly Payment, SI III shall make a payment to DPI III of $1,253,748.00.

All other terms and conditions of the PSA, DP SLFI Put Agreement and DPI III Put Agreement remain in full force and effect, including but not limited to the Guaranty of obligations with respect the Monthly Payments and payments shown in Exhibit A of this agreement.

If the foregoing is consistent with your understanding of the terms and conditions of our agreement, please execute the enclosed counterpart copy of this letter and return it to SI III at your earliest convenience. Thank you.

Very truly yours,

SHOPOFF INVESTORS III, L.P., a Delaware limited partnership

By:      The Shopoff Corporation, a Delaware corporation, General Partner

By:      _____
         William A. Shopoff, President

AGREED TO AND ACCEPTED BY:

DP SLFI, LLC, a Delaware limited liability company

By:      DP SLFI Member, LLC, a Delaware
         limited liability company, Manager

         By:      _____
                  David Placek, Manager

DP INVESTORS III, LLC, a Delaware limited
liability company

By:      DP SLFI Member, LLC, a Delaware
         limited liability company, Manager

         By:      _____
                  David Placek, Manager

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK. (See below.) Page 36 of 71 INDEX NO. UNASSIGNED

Case 1:18-cv-02187-DGC-JDE Document 1 Filed 12/10/18 Page 36 of 71 Page ID #:36

NYSCEF DOC. NO. 11

RECEIVED NYSCEF: 04/09/2018

Mr. David Placek
May 1, 2017
Page 3 of 3

EXHIBIT A

| | | |
|---|---|---|
| 5/1/2017 | $ | 250,000.00 |
| 6/1/2017 | $ | 250,000.00 |
| 7/1/2017 | $ | 250,000.00 |
| 8/1/2017 | $ | 250,000.00 |
| 9/1/2017 | $ | 250,000.00 |
| 9/30/2017 | $ | 1,253,748.00 |
| 10/1/2017 | $ | 250,000.00 |
| 11/1/2017 | $ | 250,000.00 |
| 12/1/2017 | $ | 250,000.00 |
| 1/1/2018 | $ | 250,000.00 |
| 2/1/2018 | $ | 250,000.00 |
| 3/1/2018 | $ | 250,000.00 |
| 4/1/2018 | $ | 562,965.00 |

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**EXHIBIT D**

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 12

RECEIVED NYSCEF: 04/09/2018

**SHOPOFF INVESTORS III, L.P.**
c/o Shopoff Realty Investments, L.P.
2 Park Plaza, Suite 700
Irvine, CA 92614

November 19, 2017

DP SLFI, LLC
DP Investors III, LLC
Attn: David Placek
218 South Mountain Ave
Montclair, NJ 07042

Re:  <u>Agreement re Purchase and Sale of Partnership Interest (Shopoff Land Fund I, L.P.)</u>

Dear David:

   This letter agreement (this *"Letter Agreement"*) will confirm the agreements and understandings between the undersigned parties concerning (a) that certain *Agreement for Purchase and Sale of Partnership Interest (Shopoff Land Fund I, L.P.)* dated March 21, 2014, between DP SLFI, LLC, a Delaware limited liability company (*"DP SLF I"*), and Shopoff Investors III, L.P., a Delaware limited partnership (*"SI III"*), as amended (the *"PSA"*), (b) that certain *Limited Partnership Put Agreement (Shopoff Land Fund I, L.P.)* dated October 18, 2012, between DP SLF I and SI III, as may have been amended (the *"DP SLFI Put Agreement"*), and (c) that certain *Limited Partnership Put Agreement (Shopoff Investors III, L.P.)* dated October 18, 2012, between DP Investors III, LLC, a Delaware limited liability company (*"DPI III"*; and together with DP SLF I, *"DP"*), and SI III, as may have been amended (the *"DPI III Put Agreement"*; and together with the DP SLFI Put Agreement, the *"Put Agreements"*). The PSA and the Put Agreements may hereinafter sometime be collectively referred to as the *"Put Documents"*.

   The parties hereby acknowledge and agree that (i) as of the date hereof, DP has received partial payments pursuant to DP SLF I and DPI III's exercise of its put options under the Put Agreements, thereby reducing the obligations owed under the Put Documents, and (ii) <u>Schedule A</u>, attached hereto and incorporated herein by this reference, amends in the entirety the remaining payments owed, and the timing of such payments. The parties hereby agree that upon DP SLF I's receipt of all such payments set forth in <u>Schedule A</u>, all obligations of SI III under each of the Put Documents shall be deemed satisfied in full.

   Should SI III fail to make payment within five (5) calendar days of the payment date as set forth in Schedule A attached hereto, SI III shall be assessed (1) a late payment fee of Three Thousand Dollars ($3,000), plus (2) Fifty Dollars ($50.00) per day, shall accrue from and after the payment date until the delinquent payment is made; provided, however, upon the third and any subsequent late payment, the per diem payment shall accrue at Five Hundred Dollars ($500.00) per day until such delinquent payment is made. Should SI III fail to make the final balloon payment ($2.4 Million) on or before October 5, 2018, SI shall be assessed (1) a late payment fee of Fifty Thousand Dollars ($50,000) (due and payable on October 5, 2018 if the balloon payment is not paid by October 5, 2018), plus (2) the final balloon payment shall accrue interest from and after October 5, 2018 at twelve percent (12%) per annum until the balloon payment is made, with monthly interest payments due on the first day of each calendar month until the final balloon payment is made.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

David Placek
November 19, 2017
Page 2

All other terms and conditions of the Put Documents remain in full force nd effect, including but not limited to that certain *Guaranty* dated October 18, 2012, made by William A. Shopoff in favor of DP SLF I and DPI III.

If the foregoing is consistent with your understanding of the terms and conditions of our agreement, ple se execute the enclosed counterpart copy of this letter and return it to SI III at your earliest convenience. Thank you.

Very truly yours,

SHOPOFF INVESTORS III, L.P., a Delaware limited partnership

By:    The Shopoff Corporation, a Delaware corporation, General Partner

By:                                             
William A. Shopoff, President

AGREED TO AND ACCEPTED BY:

DP SLFI, LLC, a Delaw re limited liability company

By:    DP SLFI Member, LLC, a Delaware limited liability company, Manager

By:              
David Placek, Manager

DP INVESTORS III, LLC, a Delaware limited liability company

By:    DP SLFI Member, LLC, a Delaware limited liability company, Manager

By:              
David Placek, Manager

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (SEE BELOW.)

NYSCEF DOC. NO. 12

RECEIVED NYSCEF: 04/09/2018

David Placek
November 19, 2017
Schedule A

## SCHEDULE A

| | |
|---|---|
| Paid already | 25,000 |
| 12/29/2017 | 200,000 |
| 1/5/2018 | 35,000 |
| 2/5/2018 | 35,000 |
| 3/5/2018 | 70,000 |
| 4/5/2018 | 35,000 |
| 5/5/2018 | 35,000 |
| 6/5/2018 | 35,000 |
| 7/5/2018 | 35,000 |
| 8/5/2018 | 35,000 |
| 9/5/2018 | 35,000 |
| 10/5/2018 | 2,400,000 |

In addition $250,000 will be distributed upon the sale of El Monte (Brookside) project.
This is currently expected to be 1/15/2018.
In addition $275,000 will be distributed upon the sale of Groves project.
This is currently expected to be 3/15/2018.
In no event shall the El Monte or Groves payments be made later than 3/31/2018.

In addition, $565,000 is being converted to TSG Venture 1, LLC (aka Uptown).



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

# EXHIBIT E

CAUTION: ~~THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK (See below.)~~ Page 42 of 71 INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 10

RECEIVED NYSCEF: 04/09/2018

Case 8:18-cv-02187-DOC-JDE   Document 1   Filed 12/10/18   Page 42 of 71   Page ID #:42

## GUARANTY

This GUARANTY (this *"Guaranty"*) is entered into as of October 18, 2012, by **WILLIAM A. SHOPOFF**, having an address of 2 Park Plaza, Suite 700, Irvine, California 92614 (*"Guarantor"*), in favor of **DP SLFI, LLC**, a Delaware limited liability company (*"DP SLFI"*) and **DP INVESTORS III, LLC**, Delaware limited liability companies (*"DP Investors III"*). DP SLFI and DP Investors III are sometime collectively referred to herein as *"Placek"*.

### RECITALS

**A.**     Concurrently herewith, DP SLFI, an affiliate of DP Investors III, has agreed to contribute, at the times specified in that certain *Limited Partnership Put Agreement (Shopoff Land Fund I, L.P.)* of even date herewith (the *"Land Fund Put Agreement"*), capital (*"DP SLFI's Land Fund Capital Contribution"*) to Shopoff Land Fund I, L.P., a Delaware limited partnership (the *"Land Fund Partnership"*), in an amount which is undetermined as of the date hereof but which shall be not less than Two Million Five Hundred Thousand Dollars ($2,500,000) or more than Six Million Five Hundred Thousand Dollars ($6,500,000), and by reason thereof is being admitted as a limited partner of the Land Fund Partnership. The limited partnership interest being acquired by DP SLFI shall hereinafter be referred to as the *"DP SLFI Land Fund Interest"*.

**B.**     As an inducement to DP SLFI to invest in the Land Fund Partnership and acquire the DP SLFI Land Fund Interest, without which DP SLFI would not have agreed to invest in the Land Fund Partnership:

1.     Shopoff Investors III, L.P. (*"Investors III"*) has agreed to grant to DP SLFI a put option (the *"Land Fund Put Option"*) by which, at DP SLFI's election, Investors III will be obligated to purchase (or cause an affiliate of Investors III to purchase) the DP SLFI Land Fund Interest at a price and under the terms and conditions set forth in the Land Fund Put Agreement;

2.     Investors III agreed to admit DP Investors III as a limited partner in Investors III (the limited partnership interest being acquired by DP Investors III shall hereinafter be referred to as the **"DP Investors III LP Interest"**), and to grant to DP Investors III a put option (the *"Investors III Put Option"*) by which, at DP Investor III's election or deemed election, Investors III will be obligated to purchase (or cause an affiliate of Investors III to purchase) the DP Investors III LP Interest at a price and under the terms and conditions set forth in that certain *Limited Partnership Put Agreement (Shopoff Investors III, L.P.)* of even date herewith (the *"Investors III Put Agreement"*); and

3.     William A. Shopoff, a principal of Investors III, has agreed to enter into this Guaranty for the purpose of personally guarantying the obligations of Investors III under the Land Fund Put Option and the Investors III Put Option (collectively, the *"Put Options"*).

### AGREEMENT

NOW THEREFORE, in consideration of DP SLFI contributing DP SLFI's Land Fund Capital Contribution to the Land Fund Partnership, the receipt and sufficiency of which are acknowledged, Guarantor hereby certifies, represents and warrants to Placek, and agrees as follows:

1.     **GUARANTEED OBLIGATIONS.** Guarantor hereby unconditionally and independently of any liability of Investors III guarantees and agrees as follows:

1.1     **Payment Guaranty.** Guarantor hereby irrevocably, absolutely and unconditionally guarantees and promises to pay to or for the benefit of Placek, their successors and assigns, on demand after the occurrence or existence of any default, in lawful money of the United States of America, all

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

amounts which are due and payable under the Put Options, when and as required under the Put Options, and attorneys' fees, expenses and court costs (whether incurred in connection with any enforcement activities by Placek or otherwise, in any appeal proceedings or in any bankruptcy proceedings involving Investors III or Guarantor) (all of the foregoing shall be referred to as the *"Guaranteed Obligations"*).

    1.2    **No Waivers.** Nothing contained in this *Section 1* shall be deemed to be a waiver of any right which Placek may have under provisions of the U.S. Bankruptcy Code, or any other provision of applicable law, to file a claim in any United States Bankruptcy Court for the full amount of the Guaranteed Obligations.

2.    <u>**PERFORMANCE BY GUARANTOR.**</u>

    2.1    <u>**Failure To Perform.**</u> If Investors III fails to perform the Guaranteed Obligations on or before the times such matters are to be satisfied by Investors III, Guarantor shall perform, at Guarantor's expense, any such matter which Investors III has failed to satisfy.

    2.2    <u>**Failure To Take Prompt Action.**</u> If Guarantor fails to take any such action promptly, Placek may pursue any remedies at law or in equity against Guarantor, without having to proceed first against Investors III, and may itself take such action, and Guarantor shall be liable to Placek for all expenses, including attorneys' fees incurred by Placek, and all amounts paid by Placek in taking any such action.

3.    <u>**CERTAIN RIGHTS OF PLACEK.**</u> Placek may, without the consent of Guarantor, at any time and from time to time:

    3.1    Enter into amendments with Investors III of any provision of the Put Options, including any change in the time or manner of payment thereunder, and/or

    3.2    make any agreement with Investors III for the extension, payment, compounding, compromise, discharge or release of any provision of the Put Options, or either of them, without notice to or the consent of Guarantor.

4.    <u>**WAIVERS BY GUARANTOR.**</u>

    4.1    <u>**Waiver of Legal Requirements.**</u> Guarantor hereby waives any and all legal requirements that Placek shall institute any action or proceedings at law or in equity against Investors III or anyone else with respect to the breach of the Guaranteed Obligations or with respect to any security now or hereafter held by Placek, as a condition precedent to bringing an action against Guarantor pursuant to this Guaranty. All remedies afforded to the parties by reason of this Guaranty are separate and cumulative remedies and none of such remedies, whether exercised by Placek or not, shall be deemed to be in exclusion of any one of the other remedies available to Placek, and shall not in any way limit or prejudice any other legal or equitable remedy available to Placek.

    4.2    <u>**Additional Waivers.**</u> Guarantor hereby waives presentment for payment, demand, protest, notice of protest and of dishonor, notice of acceptance hereof, notices of default and all other notices now or hereafter provided by law.

    4.3    <u>**Waiver of Right To Require Placek To Proceed.**</u> Guarantor waives all right to require Placek to proceed against Investor's III or any other person, firm or corporation or to apply any security Placek may hold at any time or to pursue any judicial, non-judicial and/or provisional remedy. Placek may proceed against Guarantor with respect to the Guaranteed Obligations without taking any action

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5(d)) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

against Investors III or any other person, firm or corporation and without proceeding against or applying any security Placek holds.

    **4.4**    <u>Event of Default</u>. Upon the failure of Guarantor to satisfy any of its obligations hereunder, Placek may maintain an action upon this Guaranty whether or not action is brought against Investors III and whether or not Investors III is joined in any such action. Placek may maintain successive actions for other defaults, and Placek's rights hereunder shall not be exhausted or waived, and Placek shall not be estopped to proceed against Guarantor pursuant to this Guaranty, by the exercise of any of Placek's rights or remedies or by any such action or by any number of successive actions, until and unless the Guaranteed Obligations have been fully satisfied and each of Guarantor's obligations hereunder has been fully performed or otherwise satisfied.

    **4.5**    <u>Civil Code Waivers</u>. Guarantor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Guarantor under California Civil Code Sections 2787 to 2855, inclusive.

    **4.6**    <u>ACKNOWLEDGMENT OF WAIVERS</u>. Guarantor acknowledges that it has relied on the advice of its own counsel in making this Guaranty and has reviewed the waivers of rights contained herein with its counsel. Guarantor further acknowledges that it understands and accepts as a necessary part of this Guaranty the waivers of rights set forth above, after reviewing the extent and effect of the waivers in this Guaranty with its counsel.

**5.**    <u>GUARANTOR'S WARRANTIES</u>.

    **5.1**    Guarantor warrants and acknowledges that:

        **5.1.1**    there are no conditions precedent to the effectiveness of this Guaranty, and this Guaranty shall be in full force and effect and binding on Guarantor regardless of whether Placek obtains other collateral or any guarantees from others or takes any other action contemplated by Guarantor; and

        **5.1.2**    Guarantor has established adequate means of obtaining from sources other than Placek, on a continuing basis, financial and other information pertaining to Investors III's financial condition and Investors III's activities relating thereto and the status of Investors III's performance of obligations imposed by the Put Options, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Placek has made no representation to Guarantor as to any such matters;

**6.**    <u>NO RELEASE</u>. Until the Guaranteed Obligations have been fully satisfied, and until all of the terms, covenants and conditions of this Guaranty are fully performed, Guarantor shall not be released by any act or thing which might, but for this paragraph, be deemed a legal or equitable discharge of a surety, or by reason of any waiver, extension, modification, forbearance or delay of Placek or its failure to proceed promptly or otherwise, or to any of the other terms, covenants and conditions contained therein, and Guarantor hereby expressly waives and surrenders any defense to this liability under this Guaranty based upon any of the foregoing acts, things, agreements or waivers.

**7.**    <u>NOTICES</u>. Except as expressly provided herein to the contrary, any notice, demand or request by Placek to Guarantor shall be in writing and shall be duly given or made to Guarantor if either delivered personally or if mailed by U.S. registered or certified mail to Investors III at the address for Investors III appearing in the Put Options.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (see below.)   INDEX NO. UNASSIGNED

Case 8:18-cv-02187-DOC-JDE   Document 1   Filed 12/10/18   Page 45 of 71   Page ID #:45

NYSCEF DOC. NO. 10                                                    RECEIVED NYSCEF: 04/09/2018

8.   **GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with California law, without regard to conflicts of law principles.

9.   **BINDING EFFECT.** This Guaranty shall inure to the benefit of Placek and their successors and assigns and shall be binding upon the heirs, personal representatives, successors and assigns of Guarantor.

10.   **JURY TRIAL WAIVER.** Guarantor irrevocably waives and agrees not to assert, by way of motion, as a defense or otherwise, any right which it may have to a trial by jury in connection with any suit, action or proceeding arising out of or relating to this Guaranty, all to the fullest extent permissible under applicable law.

11.   **SEVERABILITY.** Every provision of this Guaranty is intended to be severable. If any term, provision, section or subsection of this Guaranty is declared to be illegal or invalid, for any reason whatsoever, by a court of competent jurisdiction, such illegality or invalidity shall not affect the other terms, provisions, sections or subsections of this Guaranty, which shall remain binding and enforceable.

13.   **FEES AND EXPENSES.** Guarantor agrees to pay all of the Placek's costs and expenses, including reasonable attorneys' fees, which may be incurred in any effort to enforce any term of this Guaranty, including all such costs and expenses which may be incurred by Placek in any legal action, reference or arbitration proceeding.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date first above written.

WILLIAM A. SHOPOFF

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

**EXHIBIT F**

## LIMITED PARTNERSHIP PUT AGREEMENT
### (Land Fund II)

This Limited Partnership Put Agreement (this *"Agreement"*) is entered into by and between **DP SLF II, LLC**, a Delaware limited liability company (*"LP"*), and **SHOPOFF INVESTORS IV, L.P.**, a Delaware limited partnership (*"Investors IV"*), and is dated as of April 4, 2014 (the *"Effective Date"*), with respect to the following:

### RECITALS:

      A.      Concurrently herewith, LP has agreed, at the time specified below, to contribute to Shopoff Land Fund II, L.P., a Delaware limited partnership (the *"Partnership"*), the amount of Three Million Five Hundred One Thousand Four Hundred and Fifty Dollars ($3,501,450), and by reason thereof is being admitted as a limited partner of the Partnership owning 3,765 limited partnership units (*"LP's Partnership Interest"*).

      B.      As an inducement to LP to invest in the Partnership and acquire LP's Partnership Interest, without which LP would not have agreed to invest in the Partnership, Investors IV has agreed to grant to LP a put option (the *"Put Option"*) by which, at LP's election, Investors IV will be obligated to purchase (or cause an affiliate of Investors IV to purchase) LP's Partnership Interest at a price and under the terms and conditions set forth in this Agreement.

      C.      As an inducement to Investors IV to accept LP's investment in the Partnership, without which Investors IV would not have agreed to grant to LP the Put Option, LP has agreed to grant to Investors IV a call option (the *"Call Option"*) by which, at Investors IV's option, LP be obligated to sell and assign to Investors IV (or to a party designated by Investors IV) LP's Partnership Interest at a price and under the terms and conditions set forth in this Agreement.

      NOW THEREFORE, in consideration of the foregoing, and the mutual covenants of the parties herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

      1.      <u>Put Option</u>. Subject to the satisfaction of the contribution condition set forth in below, Investors IV hereby grants the Put Option to LP. LP may exercise the Put Option by written notice (a *"Put Notice"*) delivered to Investors IV on or before a date which is not later than thirty-five (35) months after the Funding Date. Upon LP's timely exercise of the Put Option, Investors IV shall be obligated to purchase LP's Partnership Interest for the price set forth in <u>Section 3</u> below and upon the terms set forth herein. If LP does not deliver a Put Notice to Investors IV on or before a date which is not later than thirty-five (35) months after the Funding Date, the Put Option shall terminate and neither party shall have any further obligation with respect to the Put Option. The Put Option shall become effective only if LP contributes Three Million Five Hundred One Thousand Four Hundred and Fifty Dollars ($3,501,450), by a date (the *"Funding Date"*) which is on or before <u>April 30, 2014</u>. To clarify, the Funding Date shall mean the date, or dates (if funds are contributed on multiple dates) funds are actually contributed to the Partnership.

      The acceptance of any funds later than the applicable date set forth above shall be subject to written approval by Investors IV in its sole discretion, failing which, such funds shall not become a part

of LP's Partnership capital contribution and shall be returned to LP, in which event this Agreement shall terminate.

2.   Call Option. Subject to the Put Option becoming effective as provided in this Agreement, LP hereby grants the Call Option to Investors IV with respect to LP's Partnership Interest. Investors IV may exercise the Call Option by written notice delivered to LP (a *"Call Notice"*) at any time on or after the date which is eighteen (18) months after the Funding Date and on or before the third (3rd) anniversary date of the Funding Date. Upon Investors IV's timely exercise of the Call Notice, LP shall be obligated to sell and assign LP's Partnership Interest (or to a party designated by Investors IV) at the price specified in Section 3 below. If Investors IV does not deliver a Call Notice on or before the third (3rd) anniversary date of the Funding Date, the Call Option shall terminate and neither party shall have any further obligation with respect to the Call Option.

3.   Purchase Price. If either LP timely exercises the Put Option, or if Investors IV timely exercises the Call Option, the purchase price for LP's Partnership Interest (the *"Purchase Price"*) shall be $6,050,506 (subject to adjustment as provided in subsections iii. and/or iv. below), and the payment thereof (the *"Payment"*) shall be paid to LP on one of the following two dates:

   i.   If the Payment has been triggered as the result of the exercise of the Put Option by LP, the Payment shall be due and payable not later than the third (3rd) anniversary date of the Funding Date, or

   ii.   If the Payment has been triggered as the result of the exercise of the Call Option by Investors IV, the Payment shall be due and payable on a date which is not later than thirty (30) days after delivery of the Call Notice to LP by Investors IV.

provided, however, the foregoing amount and payment dates are subject to the following adjustments, where applicable:

   iii.   Any distributions of cash received by LP on account of LP's Partnership Interest before the Payment Date shall be credited to the Payment.

   iv.   In the event that Investors IV timely exercises the Call Option, and Investors IV delivers the Payment to LP prior to the third (3rd) anniversary of the Funding Date, the Payment (after applying any adjustment pursuant to subsection c. above) shall be discounted to present value as of the date of actual payment of the Payment by Investors IV, based on a discount rate of twenty percent (20%) per annum, compounded daily based on the Excel XIRR formula. As an example only, if the Funding Date is April 15, 2014, and Investors IV exercised the Call Option by delivering a Call Notice on October 15, 2016, and LP had received a $500,000 distribution attributable to LP's Partnership Interest on April 1, 2016, then the Payment shall be reduced to $4,975,000   (the present value as of October 15, 2016 of a $4,321,330 payment obligation maturing on April 15, 2017, reduced by $500,000 on April 1, 2016) , based on a discount rate of twenty percent (20%) per annum, compounded daily based on the Excel IRR formula, and the overall Purchase Price shall be reduced by the amount of such discount.

4.   Closing; Clear Title. On the date LP receives the Payment (the *"Closing Date"*), LP shall execute an assignment (which shall be on commercially reasonable terms) of LP's Partnership Interest by

which LP shall assign to Investors IV, all right, title and interest in and to LP's Partnership Interest, and shall withdraw as a limited partner of the Partnership, and agrees to execute and deliver to Investors IV such other reasonable customary documentation evidencing or confirming LP's withdrawal from the Partnership. LP agrees from time to time thereafter, at the request of Shopoff, to acknowledge in writing (on commercially reasonable terms) its withdrawal from the Partnership. On the Closing Date, LP's transfer and assignment of LP's Partnership Interest to Investors IV (or designated nominee) shall be free and clear of any third-party claims. During the period of LP's ownership of LP's Partnership Interest, LP shall not sell, assign, encumber or hypothecate any portion of LP's Partnership Interest.

    5.    <u>Covenants, Representations and Warranties.</u>

    5.1    <u>Covenants, Representations and Warranties of Investors IV</u>. Investors IV hereby represents, warrants and covenants to LP as to the following:

    a.    <u>No Litigation</u>. There is no action or proceeding or governmental investigation pending, or to the best knowledge of Investors IV, threatened, against or relating to (i) this transaction, (ii) the Partnership, or (iii) Investors IV, which would affect LP or prevent the consummation of the Put Option, if exercised by LP.

    b.    <u>Due Formation; Conduct of Business</u>. The Partnership and Investors IV is each (a) a limited partnership duly organized, validly existing and in good standing in the State of its formation, and (b) is entitled to own its property and to carry on its business in the state(s) in which it conducts its business.

    c.    <u>Authorization of Agreement</u>. The execution and performance of this Agreement have been duly authorized by all necessary partnership action, and the execution and performance of this Agreement (including, without limitation, the exercise of the Put Option) will not violate any term of Investors IV's or the Partnership's certificate of limited partnership, partnership agreement, or any other agreement, judicial decree, statute or regulation to which Investors IV or the Partnership is a party.

    d.    <u>Consummation of Transactions by Investors IV</u>. Investors IV has, or shall have at the appropriate time, sufficient assets to satisfy its obligations set forth in this Agreement.

    e.    <u>No Other Adverse Facts</u>. There are no facts known to Investors IV, other than any facts which have been disclosed to LP in writing, which might have a material adverse effect on the transactions contemplated in this Agreement, including, without limitation, the exercise and consummation of the Put Option, and no representation or warranty made by Investors IV in this Agreement, in any exhibit attached hereto, or in any letter or certificate furnished to LP pursuant to the terms of this Agreement, each of which is incorporated herein by reference and made a part hereof, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

    f.    <u>Consents and Approvals</u>. There are no consents or approvals of any third persons, or any federal, state or local governmental authorities, including, without limitation, any internal board of directors or other approval process, that are required in connection with the performance by Investors IV of its obligations under this Agreement.

g. <u>Amendment of Organization Documents; Other Actions</u>. The certificate of limited partnership and limited partnership agreement of Partnership and Investors IV shall not be amended in a manner, and such entities shall take no action, which shall materially and adversely affect the transactions described in this Agreement, including, without limitation, the consummation of the Put Option.

5.2. <u>Representations and Warranties of LP</u>. LP represents and warrants to Investors IV that (a) LP is a limited liability company duly formed and validly existing in the State of Delaware, entitled to own its property and to carry on its business in the state of Delaware, (b) LP has duly authorized the execution and performance of this Agreement, and (c) the execution and performance of this Agreement will not violate any term of LP's certificate of formation or operating agreement, or any other agreement, judicial decree, statute or regulation to which LP is a party or by which LP may be bound or affected.

5.3. <u>Materiality</u>. Investors IV acknowledges that each of the representations, warranties, covenants and agreements made by it in <u>Section 5.1</u> above and elsewhere in this Agreement is material to LP. LP acknowledges that each of the representations, warranties, covenants and agreements made by it in <u>Section 5.2</u> above and elsewhere in this Agreement is material to Investors IV.

5.4. <u>Survival</u>. All of the representations, warranties and covenants of Investors IV set forth in this <u>Section 5</u> and elsewhere in this Agreement shall be true upon the execution of this Agreement, and shall be deemed to be repeated for the duration of the period expiring upon the later to occur of when all of the obligations of Investors IV under the Put Option have been satisfied or the Put Option has expired unexercised by LP.

6. <u>Guaranty of Obligations of Investors IV</u>. LP and Investors IV acknowledge and agree that as a material condition to LP entering into this Agreement, Investors IV shall cause William A. Shopoff and the Shopoff Revocable Trust to execute and deliver to LP a Guaranty of Obligations in the form attached hereto as <u>Exhibit A</u> simultaneously with the execution of this Agreement.

7. <u>Default Interest Rate and Late Payment Fee</u>. Any payment not made on the specified payment or payable date shall accrue interest a rate of twenty percent (20%) per annum (the "*Default Interest Rate*") from the date of delinquency until paid.

8. <u>Notices</u>. All written notices and demands of any kind which either party may be required or may desire to serve upon the other party in connection with this Agreement may be (a) personally served, (b) served by registered or certified mail (postage pre-paid), (c) sent by facsimile transmission (provided that the original notice or demand is delivered by next day overnight delivery service), or (d) sent by next day overnight delivery service. Any such notice or demand shall be addressed to the parties as listed in this <u>Section 8</u>. Service of any such notice or demand shall be deemed complete upon receipt in the event of personal service, on the third business day after deposit in the U.S. mail if sent via registered or certified mail, upon transmission with a printed confirmation of receipt from the transmitting facsimile machine without notation of error in the event sent via facsimile transmission, and on the next business day if sent via an overnight delivery service with a delivery confirmation, if sent to each party at the address set forth below with the required proper postage:

| To Investors IV: | c/o The Shopoff Group, L.P. |
| --- | --- |
| | 2 Park Plaza, Suite 700 |
| | Irvine, California 92614 |
| | Attn: William A. Shopoff |
| | Telephone: (949) 417-1397 |
| | Facsimile: (949) 417-1399 |
| | |
| | Stevan J. Gromet, Esq. |
| | Gromet & Associates |
| | 114 Pacifica, Suite 250 |
| | Irvine, California 92618 |
| | Telephone: (949) 261-1110 |
| | Facsimile: (949) 261-1818 |
| | |
| To LP: | DP SLF II, LLC |
| | c/o The Shopoff Group, L.P. |
| | 575 Lexington Avenue, 4th Floor |
| | New York, New York 10022 |
| | Attn: David Placek |
| | Telephone: (212) 906-0124 |
| | Facsimile: (646) 607-9168 |
| | |
| With Copy To: | Wayne R. Landesman, Esq. |
| | D'Agostino, Levine, Landesman & Lederman, LLP |
| | 345 Seventh Avenue, 23rd Floor |
| | New York, New York 10001 |
| | Telephone: (212) 564-9800 |
| | Facsimile: (212) 564-9802 |

9.    <u>Miscellaneous</u>. This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of California, without giving effect to the conflicts of laws principles thereof. The parties consent to jurisdiction and venue in any federal or state court in the County of Orange, California. This Agreement states the entire agreement and understanding regarding the subject matter hereof. This Agreement may be amended only by a written document signed by the parties hereto. No delay or failure to exercise any right under this Agreement waives such rights under this Agreement. If any provision of this Agreement is partially or completely invalid or unenforceable, then that provision shall only be ineffective to such extent of its invalidity or unenforceability, and the validity or enforceability of any other provision of this Agreement shall not be affected. Time is of the essence of this Agreement and each provision hereof. Any controversy relating to this Agreement shall be settled by arbitration in Orange County, California in accordance with the Commercial Arbitration Rules of the American Arbitration Association. In the event of any inconsistency between this Agreement and any personnel policy or manual of Company with respect to any matter, this Agreement shall govern the matter.

///

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

SHOPOFF INVESTORS IV, L.P.,
a Delaware limited partnership

By:    The Shopoff Corporation, a Delaware
corporation, General Partner

By: _____
    William A. Shopoff, President

DP SLF II, LLC, a Delaware limited liability
company

By:    DP SLF II Member, LLC, a Delaware
limited liability company, its Manager

By: _____
    David Placek, Manager

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

| | |
|---|---|
| SHOPOFF INVESTORS IV, L.P., a Delaware limited partnership | DP SLF II, LLC, a Delaware limited liability company |

By:  The Shopoff Corporation, a Delaware
        corporation, General Partner

By:  DP SLF II Member, LLC, a Delaware
        limited liability company, its Manager

By: _____
        William A. Shopoff, President

By: _____
        David Placek, Manager

**EXHIBIT "A"**

**GUARANTY OF OBLIGATIONS**

*[see attached]*

## GUARANTY OF OBLIGATIONS

This GUARANTY OF OBLIGATIONS (this *"Guaranty"*) is entered into as of April 4, 2014, by **WILLIAM A. SHOPOFF**, in his individual capacity, and **WILLIAM A. SHOPOFF** and **CINDY I. SHOPOFF**, as Trustees of the Shopoff Revocable Trust dated August 12, 2004 (the *"Trust"*), having an address of 2 Park Plaza, Suite 700, Irvine, California 92614 (collectively, *"Guarantor"*), in favor of **DP SLF II, LLC,** a Delaware limited liability company (*"DP II"*).

### RECITALS

A.      Concurrently herewith, DP II has agreed to contribute, at the times specified in that certain *Limited Partnership Put Agreement (Shopoff Land Fund II, L.P.)* of even date herewith (the *"Put Agreement"*), capital (*"DP II's Capital Contribution"*) to Shopoff Land Fund II, L.P., a Delaware limited partnership (the *"Partnership"*), in the amount Three Million Five Hundred One Thousand Four Hundred Fifty Dollars ($3,501,450), and by reason thereof is being admitted as a limited partner of the Partnership owning 3,765 limited partnership units (*"DP II's LP Interest"*).

B.      As an inducement to DP II to invest in the Partnership and acquire DP II's LP Interest, without which DP II would not have agreed to invest in the Partnership, Shopoff Investors IV, L.P., a Delaware limited partnership (*"Investors IV"*), has agreed to grant to DP II a put option (the *"Put Option"*) by which, at DP II's election, Investors IV will be obligated to purchase (or cause an affiliate of Investors IV to purchase) DP II's LP Interest at a price and under the terms and conditions set forth in the Put Agreement; and

C.      As a further inducement to DP II to invest in the Partnership and acquire DP II's LP Interest, without which DP II would not have agreed to invest in the Partnership, William A. Shopoff, an individual and principal of Investors IV, and William A. Shopoff and Cindy I. Shopoff, as trustees of the Trust, also principals of Investors IV, have agreed to enter into this Guaranty for the purpose of personally guarantying the obligations of Investors IV under the Put Option.

### AGREEMENT

NOW THEREFORE, in consideration of DP II contributing DP II's Capital Contribution to the Partnership, the receipt and sufficiency of which are acknowledged, Guarantor hereby certifies, represents and warrants to DP II, and agrees as follows:

1.      **GUARANTEED OBLIGATIONS.** Guarantor hereby unconditionally and independently of any liability of Investors IV, guarantees and agrees as follows:

1.1      **Payment Guaranty.** Guarantor hereby irrevocably, absolutely and unconditionally guarantees and promises to pay to or for the benefit of DP II, their successors and assigns, on demand after the occurrence or existence of any default, in lawful money of the United States of America, all amounts which are due and payable under the Put Option, when and as required under the Put Option, and attorneys' fees, expenses and court costs (whether incurred in connection with any enforcement activities by DP II or otherwise, in any appeal proceedings or in any bankruptcy proceedings involving Investors IV or Guarantor) (all of the foregoing shall be referred to as the *"Guaranteed Obligations"*).

1.2      **No Waivers.** Nothing contained in this Section 1 shall be deemed to be a waiver of any right which DP II may have under provisions of the U.S. Bankruptcy Code, or any other provision of applicable law, to file a claim in any United States Bankruptcy Court for the full amount of the Guaranteed Obligations.

2.    **PERFORMANCE BY GUARANTOR.**

    **2.1**    **Failure To Perform.** If Investors IV fails to perform the Guaranteed Obligations on or before the times such matters are to be satisfied by Investors IV, Guarantor shall perform, at Guarantor's expense, any such matter which Investors IV has failed to satisfy.

    **2.2**    **Failure To Take Prompt Action.** If Guarantor fails to take any such action promptly, DP II may pursue any remedies at law or in equity against Guarantor, without having to proceed first against Investors IV, and may itself take such action, and Guarantor shall be liable to DP II for all expenses, including attorneys' fees incurred by DP II, and all amounts paid by DP II in taking any such action.

3.    **CERTAIN RIGHTS OF DP II.** DP II may, without the consent of Guarantor, at any time and from time to time:

    **3.1**    Enter into amendments with Investors IV of any provision of the Put Option, including any change in the time or manner of payment thereunder, and/or

    **3.2**    make any agreement with Investors IV for the extension, payment, compounding, compromise, discharge or release of any provision of the Put Option, or either of them, without notice to or the consent of Guarantor.

4.    **WAIVERS BY GUARANTOR.**

    **4.1**    **Waiver of Legal Requirements.** Guarantor hereby waives any and all legal requirements that DP II shall institute any action or proceedings at law or in equity against Investors IV or anyone else with respect to the breach of the Guaranteed Obligations or with respect to any security now or hereafter held by DP II, as a condition precedent to bringing an action against Guarantor pursuant to this Guaranty. All remedies afforded to the parties by reason of this Guaranty are separate and cumulative remedies and none of such remedies, whether exercised by DP II or not, shall be deemed to be in exclusion of any one of the other remedies available to DP II, and shall not in any way limit or prejudice any other legal or equitable remedy available to DP II.

    **4.2**    **Additional Waivers.** Guarantor hereby waives presentment for payment, demand, protest, notice of protest and of dishonor, notice of acceptance hereof, notices of default and all other notices now or hereafter provided by law.

    **4.3**    **Waiver of Right To Require DP II To Proceed.** Guarantor waives all right to require DP II to proceed against Investor's IV or any other person, firm or corporation or to apply any security DP II may hold at any time or to pursue any judicial, non-judicial and/or provisional remedy. DP II may proceed against Guarantor with respect to the Guaranteed Obligations without taking any action against Investors IV or any other person, firm or corporation and without proceeding against or applying any security DP II holds.

    **4.4**    **Event of Default.** Upon the failure of Guarantor to satisfy any of its obligations hereunder, DP II may maintain an action upon this Guaranty whether or not action is brought against Investors IV and whether or not Investors IV is joined in any such action. DP II may maintain successive actions for other defaults, and DP II's rights hereunder shall not be exhausted or waived, and DP II shall not be estopped to proceed against Guarantor pursuant to this Guaranty, by the exercise of any of DP II's rights or remedies or by any such action or by any number of successive actions, until and unless the

Guaranteed Obligations have been fully satisfied and each of Guarantor's obligations hereunder has been fully performed or otherwise satisfied.

**4.5**   **Civil Code Waivers.** Guarantor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Guarantor under California Civil Code Sections 2787 to 2855, inclusive.

**4.6**   **ACKNOWLEDGMENT OF WAIVERS.** Guarantor acknowledges that it has relied on the advice of its own counsel in making this Guaranty and has reviewed the waivers of rights contained herein with its counsel. Guarantor further acknowledges that it understands and accepts as a necessary part of this Guaranty the waivers of rights set forth above, after reviewing the extent and effect of the waivers in this Guaranty with its counsel.

**5.**   **GUARANTOR'S WARRANTIES.**

**5.1**   Guarantor warrants and acknowledges that:

**5.1.1**   there are no conditions precedent to the effectiveness of this Guaranty, and this Guaranty shall be in full force and effect and binding on Guarantor regardless of whether DP II obtains other collateral or any guarantees from others or takes any other action contemplated by Guarantor; and

**5.1.2**   Guarantor has established adequate means of obtaining from sources other than DP II, on a continuing basis, financial and other information pertaining to Investors IV's financial condition and Investors IV's activities relating thereto and the status of Investors IV's performance of obligations imposed by the Put Option, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and DP II has made no representation to Guarantor as to any such matters;

**6.**   **NO RELEASE.** Until the Guaranteed Obligations have been fully satisfied, and until all of the terms, covenants and conditions of this Guaranty are fully performed, Guarantor shall not be released by any act or thing which might, but for this paragraph, be deemed a legal or equitable discharge of a surety, or by reason of any waiver, extension, modification, forbearance or delay of DP II or its failure to proceed promptly or otherwise, or to any of the other terms, covenants and conditions contained therein, and Guarantor hereby expressly waives and surrenders any defense to this liability under this Guaranty based upon any of the foregoing acts, things, agreements or waivers.

**7.**   **NOTICES.** Except as expressly provided herein to the contrary, any notice, demand or request by DP II to Guarantor shall be in writing and shall be duly given or made to Guarantor if either delivered personally or if mailed by U.S. registered or certified mail to Investors IV at the address for Investors IV appearing in the Put Option.

**8.**   **GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with California law, without regard to conflicts of law principles.

**9.**   **BINDING EFFECT.** This Guaranty shall inure to the benefit of DP II and their successors and assigns and shall be binding upon the heirs, personal representatives, successors and assigns of Guarantor.

**10.**   **JURY TRIAL WAIVER.** Guarantor irrevocably waives and agrees not to assert, by way of motion, as a defense or otherwise, any right which it may have to a trial by jury in connection with any suit, action or proceeding arising out of or relating to this Guaranty, all to the fullest extent permissible under applicable law.

11.     **SEVERABILITY.** Every provision of this Guaranty is intended to be severable. If any term, provision, section or subsection of this Guaranty is declared to be illegal or invalid, for any reason whatsoever, by a court of competent jurisdiction, such illegality or invalidity shall not affect the other terms, provisions, sections or subsections of this Guaranty, which shall remain binding and enforceable.

13.     **FEES AND EXPENSES.** Guarantor agrees to pay all of DP II's costs and expenses, including reasonable attorneys' fees, which may be incurred in any effort to enforce any term of this Guaranty, including all such costs and expenses which may be incurred by DP II in any legal action, reference or arbitration proceeding.

        IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date first above written.

                                        _____
                                        WILLIAM A. SHOPOFF, individually and as Trustee
                                        of the Shopoff Revocable Trust dated August 12, 2004

                                        _____
                                        CINDY I. SHOPOFF, Trustee of the Shopoff
                                        Revocable Trust dated August 12, 2004

**EXHIBIT G**

Case 8:18-cv-02187-DOC-JDE   Document 1   Filed 12/10/18   Page 60 of 71   Page ID #:60
INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 04/09/2018

## LIMITED PARTNERSHIP PUT AGREEMENT
### (Land Fund II)

This Limited Partnership Put Agreement (this *"Agreement"*) is entered into by and between **DP SLF II Member, LLC**, a Delaware limited liability company (*"LP"*), and **SHOPOFF INVESTORS IV, L.P.**, a Delaware limited partnership (*"Investors IV"*), and is dated as of April 4, 2014 (the *"Effective Date"*), with respect to the following:

### RECITALS:

A.      Concurrently herewith, LP has agreed, at the time specified below, to contribute to Shopoff Land Fund II, L.P., a Delaware limited partnership (the *"Partnership"*), the amount of Four Hundred Ninety-Nine Thousand Four Hundred Ten Dollars ($499,410), and by reason thereof is being admitted as a limited partner of the Partnership owning 537 limited partnership units (*"LP's Partnership Interest"*).

B.      As an inducement to LP to invest in the Partnership and acquire LP's Partnership Interest, without which LP would not have agreed to invest in the Partnership, Investors IV has agreed to grant to LP a put option (the *"Put Option"*) by which, at LP's election, Investors IV will be obligated to purchase (or cause an affiliate of Investors IV to purchase) LP's Partnership Interest at a price and under the terms and conditions set forth in this Agreement.

C.      As an inducement to Investors IV to accept LP's investment in the Partnership, without which Investors IV would not have agreed to grant to LP the Put Option, LP has agreed to grant to Investors IV a call option (the *"Call Option"*) by which, at Investors IV's option, LP be obligated to sell and assign to Investors IV (or to a party designated by Investors IV) LP's Partnership Interest at a price and under the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the foregoing, and the mutual covenants of the parties herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      <u>Put Option</u>. Subject to the satisfaction of the contribution condition set forth in below, Investors IV hereby grants the Put Option to LP. LP may exercise the Put Option by written notice (a *"Put Notice"*) delivered to Investors IV on or before a date which is not later than eighty-three (83) months after the Funding Date. Upon LP's timely exercise of the Put Option, Investors IV shall be obligated to purchase LP's Partnership Interest for the price set forth in <u>Section 3</u> below and upon the terms set forth herein. If LP does not deliver a Put Notice to Investors IV on or before a date which is not later than eighty-three (83) months after the Funding Date, the Put Option shall terminate and neither party shall have any further obligation with respect to the Put Option. The Put Option shall become effective only if LP contributes Four Hundred Ninety Nine Thousand Four Hundred Ten Dollars ($499,410) by a date (the *"Funding Date"*) which is on or before <u>April 15, 2014</u>.

The acceptance of any funds later than the applicable date set forth above shall be subject to written approval by Investors IV in its sole discretion, failing which, such funds shall not become a part of LP's Partnership capital contribution and shall be returned to LP, in which event this Agreement shall terminate.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

2.    Call Option. Subject to the Put Option becoming effective as provided in this Agreement, LP hereby grants the Call Option to Investors IV with respect to LP's Partnership Interest. Investors IV may exercise the Call Option by written notice delivered to LP (a *"Call Notice"*) at any time on or after the date which is thirty-six (36) months after the Funding Date and on or before the seventh (7th) anniversary date of the Funding Date. Upon Investors IV's timely exercise of the Call Notice, LP shall be obligated to sell and assign LP's Partnership Interest (or to a party designated by Investors IV) at the price specified in Section 3 below. If Investors IV does not deliver a Call Notice on or before the seventh (7th) anniversary date of the Funding Date, the Call Option shall terminate and neither party shall have any further obligation with respect to the Call Option.

3.    Purchase Price. If either LP timely exercises the Put Option, or if Investors IV timely exercises the Call Option, the purchase price for LP's Partnership Interest (the *"Purchase Price"*) shall be $1,498,230 (subject to adjustment as provided in subsections iii. and/or iv. below), and the payment thereof (the *"Payment"*) shall be paid to LP on one of the following two dates:

   i.    If the Payment has been triggered as the result of the exercise of the Put Option by LP, the Payment shall be due and payable not later than the seventh (7th) anniversary date of the Funding Date, or

   ii.    If the Payment is the result of the exercise of the Call Option by Investors IV, the Payment shall be due and payable on a date which is not later than thirty (30) days after delivery of the Call Notice to LP by Investors IV.

provided, however, the foregoing amounts and payment dates are subject to the following adjustments, where applicable:

   iii.    Any distributions of cash received by LP on account of LP's Partnership Interest before the Payment Date shall be credited to the Payment.

   iv.    In the event that Investors IV timely exercises it Call Option, and Investors IV makes the Payment prior to the seventh (7th) anniversary of the Funding Date, the Payment (after applying any adjustment pursuant to subsection iii. above) shall be discounted to present value as of the date of actual payment of the Payment by Investors IV, based on a discount rate of twenty percent (20%) per annum, *compounded daily based on the Excel XIRR formula*. As an example only, if the Funding Date is April 15, 2014, and Investors IV exercised its Call Option by delivering a Call Notice calling for payment on October 15, 2018, and LP had received a $100,000 distribution attributable to LP's Partnership Interest on April 1, 2017, then the Payment shall be reduced to $884,699 (the present value as of October 15, 2018 of a $1,498,850 payment obligation maturing on April 15, 2021, reduced by $100,000 on April 1, 2017, based on a discount rate of seventeen (17%) per annum, *compounded daily based on the Excel XIRR formula*, and the overall Purchase Price shall be reduced by the amount of such discount.

4.    Closing; Clear Title. Investors IV and DP SLF II, LLC, a Delaware limited liability company affiliated with LP, are entering into a put/call agreement relating to the Partnership (the *"Other Put Agreement"*). LP and Investors IV agree that on the date LP receives the "Payment" (as such term is defined in the other Put Agreement (the *"Closing Date"*), LP shall execute an assignment (which shall be

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

on commercially reasonable terms) of LP's Partnership Interest by which LP shall assign to Investors IV, all right, title and interest in and to LP's Partnership Interest, and shall withdraw as a limited partner of the Partnership, and agrees to execute and deliver to Investors IV such other reasonable customary documentation evidencing or confirming LP's withdrawal from the Partnership; provided, the foregoing shall not constitute a release or waiver of LP's right to receive the Payment or the mandatory payments described in Section 7 below, which obligations shall continue until satisfied in full. LP agrees from time to time thereafter, at the request of Shopoff, to acknowledge in writing (on commercially reasonable terms) its withdrawal from the Partnership. On the Closing Date, LP's transfer and assignment of LP's Partnership Interest to Investors IV (or designated nominee) shall be free and clear of any third-party claims. During the period of LP's ownership of LP's Partnership Interest, LP shall not sell, assign, encumber or hypothecate any portion of LP's Partnership Interest. The transfer and assignment by LP of LP's Partnership Interest upon payment of the Payment pursuant to this Agreement shall not terminate the obligation of Investors IV with respect to the Second Payment, which shall continue until paid.

    5.    <u>Covenants, Representations and Warranties</u>.

    5.1    <u>Covenants, Representations and Warranties of Investors IV</u>. Investors IV hereby represents, warrants and covenants to LP as to the following:

    a.    <u>No Litigation</u>. There is no action or proceeding or governmental investigation pending, or to the best knowledge of Investors IV, threatened, against or relating to (i) this transaction, (ii) the Partnership, or (iii) Investors IV, which would affect LP or prevent the consummation of the Put Option, if exercised by LP.

    b.    <u>Due Formation; Conduct of Business</u>. The Partnership and Investors IV is each (a) a limited partnership duly organized, validly existing and in good standing in the State of its formation, and (b) is entitled to own its property and to carry on its business in the state(s) in which it conducts its business.

    c.    <u>Authorization of Agreement</u>. The execution and performance of this Agreement have been duly authorized by all necessary partnership action, and the execution and performance of this Agreement (including, without limitation, the exercise of the Put Option) will not violate any term of Investors IV's or the Partnership's certificate of limited partnership, partnership agreement, or any other agreement, judicial decree, statute or regulation to which Investors IV or the Partnership is a party.

    d.    <u>Consummation of Transactions by Investors IV</u>. Investors IV has, or shall have at the appropriate time, sufficient assets to satisfy its obligations set forth in this Agreement. Investors IV agrees not to enter into any other put or call agreements, in any form or substance, with the exception of a put agreement entered into with affiliates of Jacob Mutz (the "*Mutz Put Agreement*"), a put agreement entered into with Norman Lofthus or affiliate (the "*Lofthus Put Agreement*"), and a put/call agreement entered into by DP SLF II, LLC (the "*DP SLF II Put/Call Agreement*"). Further, until the satisfactory performance or termination of Investors IV's obligations under this Agreement, Investors IV shall not pledge more than 10.0% of Investors IV's remaining assets (after the Mutz Put Agreement, the Lofthus Put Agreement and the DP SLF II, LLC Put/Call Agreement) to entities not controlled by William A. Shopoff.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

e. <u>No Other Adverse Facts</u>. There are no facts known to Investors IV, other than any facts which have been disclosed to LP in writing, which might have a material adverse effect on the transactions contemplated in this Agreement, including, without limitation, the exercise and consummation of the Put Option, and no representation or warranty made by Investors IV in this Agreement, in any exhibit attached hereto, or in any letter or certificate furnished to LP pursuant to the terms of this Agreement, each of which is incorporated herein by reference and made a part hereof, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

f. <u>Consents and Approvals</u>. There are no consents or approvals of any third persons, or any federal, state or local governmental authorities, including, without limitation, any internal board of directors or other approval process, that are required in connection with the performance by Investors IV of its obligations under this Agreement.

g. <u>Amendment of Organization Documents; Other Actions</u>. The certificate of limited partnership and limited partnership agreement of Partnership and Investors IV shall not be amended in a manner, and such entities shall take no action, which shall materially and adversely affect the transactions described in this Agreement, including, without limitation, the consummation of the Put Option.

5.2. <u>Representations and Warranties of LP</u>. LP represents and warrants to Investors IV that (a) LP is a limited liability company duly formed and validly existing in the State of Delaware, entitled to own its property and to carry on its business in the state of Delaware, (b) LP has duly authorized the execution and performance of this Agreement, and (c) the execution and performance of this Agreement will not violate any term of LP's certificate of formation or operating agreement, or any other agreement, judicial decree, statute or regulation to which LP is a party or by which LP may be bound or affected.

5.3. <u>Materiality</u>. Investors IV acknowledges that each of the representations, warranties, covenants and agreements made by it in <u>Section 5.1</u> above and elsewhere in this Agreement is material to LP. LP acknowledges that each of the representations, warranties, covenants and agreements made by it in <u>Section 6.2</u> above and elsewhere in this Agreement is material to Investors IV.

5.4. <u>Survival</u>. All of the representations, warranties and covenants of Investors IV set forth in this <u>Section 5</u> and elsewhere in this Agreement shall be true upon the execution of this Agreement, and shall be deemed to be repeated for the duration of the period expiring upon the later to occur of when all of the obligations of Investors IV under the Put Option have been satisfied or the Put Option has expired unexercised by LP.

6. <u>Guaranty of Obligations of Investors IV</u>. LP and Investors IV acknowledge and agree that as a material condition to LP entering into this Agreement, Investors IV shall cause William A. Shopoff and the Shopoff Revocable Trust to execute and deliver to LP a Guaranty of Obligations in the form attached hereto as <u>Exhibit A</u> simultaneously with the execution of this Agreement.

7. <u>Mandatory Option Payments</u>. Independent from and in addition to the obligations of Investors IV contained herein, in consideration of LP purchasing LP's Partnership Interest, Investors IV, whether or not LP exercises the Put Option contained herein, and/or Investors IV exercises the Call Option contained herein, agrees to make the following payments to LP or affiliates of the LP, provided LP funds:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

i.      Ninety Thousand Dollars ($90,000) on the Funding Date, provided LP timely funds the $499,410 capital contribution to the Partnership on or before the Funding Date;

ii.     One Hundred Fifty-Five Thousand Dollars ($155,000) not later than June 30, 2014; and

iii.    Two Hundred Fifty Thousand Dollars ($250,000) on or before each anniversary date of the Funding Date for seven (7) consecutive years (total payments of $1.75 Million).

The foregoing payments shall not be deemed a distribution to LP and shall not be credited to Investors IV Payment of the Purchase Price under this Agreement and shall be paid regardless of the Put Option and or Call Option being exercised.

8.      <u>Default Interest Rate and Late Payment Fee</u>.  Any payment not made on the specified payment or payable date shall accrue interest a rate of twenty percent (20%) per annum (the "*Default Interest Rate*") from the date of delinquency until paid.

9.      <u>Notices</u>.  All written notices and demands of any kind which either party may be required or may desire to serve upon the other party in connection with this Agreement may be (a) personally served, (b) served by registered or certified mail (postage pre-paid), (c) sent by facsimile transmission (provided that the original notice or demand is delivered by next day overnight delivery service), or (d) sent by next day overnight delivery service. Any such notice or demand shall be addressed to the parties as listed in this <u>Section 9</u>. Service of any such notice or demand shall be deemed complete upon receipt in the event of personal service, on the third business day after deposit in the U.S. mail if sent via registered or certified mail, upon transmission with a printed confirmation of receipt from the transmitting facsimile machine without notation of error in the event sent via facsimile transmission, and on the next business day if sent via an overnight delivery service with a delivery confirmation, if sent to each party at the address set forth below with the required proper postage:

To Investors IV:            c/o The Shopoff Group, L.P.
                            2 Park Plaza, Suite 700
                            Irvine, California 92614
                            Attn:  William A. Shopoff
                            Telephone:  (949) 417-1397
                            Facsimile:  (949) 417-1399

                            Stevan J. Gromet, Esq.
                            Gromet & Associates
                            114 Pacifica, Suite 250
                            Irvine, California 92618
                            Telephone:  (949) 261-1110
                            Facsimile:  (949) 261-1818

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 14

RECEIVED NYSCEF: 04/09/2018

To LP:                    DP SLF II, LLC
                          c/o The Shopoff Group, L.P.
                          575 Lexington Avenue, 4th Floor
                          New York, New York 10022
                          Attn:   David Placek
                          Telephone:  (212) 906-0124
                          Facsimile:  (646) 607-9168

With Copy To:             Wayne R. Landesman, Esq.
                          D'Agostino, Levine, Landesman & Lederman, LLP
                          345 Seventh Avenue, 23rd Floor
                          New York, New York 10001
                          Telephone:  (212) 564-9800
                          Facsimile:  (212) 564-9802

9.      Miscellaneous. This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of California, without giving effect to the conflicts of laws principles thereof. The parties consent to jurisdiction and venue in any federal or state court in the County of Orange, California. This Agreement states the entire agreement and understanding regarding the subject matter hereof. This Agreement may be amended only by a written document signed by the parties hereto. No delay or failure to exercise any right under this Agreement waives such rights under this Agreement. If any provision of this Agreement is partially or completely invalid or unenforceable, then that provision shall only be ineffective to such extent of its invalidity or unenforceability, and the validity or enforceability of any other provision of this Agreement shall not be affected. Time is of the essence of this Agreement and each provision hereof. Any controversy relating to this Agreement shall be settled by arbitration in Orange County, California in accordance with the Commercial Arbitration Rules of the American Arbitration Association. In the event of any inconsistency between this Agreement and any personnel policy or manual of Company with respect to any matter, this Agreement shall govern the matter.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

SHOPOFF INVESTORS IV, L.P., a Delaware          DP SLF II Member, LLC, a Delaware limited
limited partnership                             liability company

By:     The Shopoff Corporation, a Delaware
        corporation, General Partner            By:     _____
                                                        David Placek, Manager
        By:     _____
                William A. Shopoff, President

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 14

Case 8:18-cv-02187-DOC-JDE   Document 1   Filed 12/10/18   Page 66 of 71   Page ID #:66
INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 04/09/2018

To LP:

DP SLF II, LLC
c/o The Shopoff Group, L.P.
575 Lexington Avenue, 4th Floor
New York, New York 10022
Attn:   David Placek
Telephone:  (212) 906-0124
Facsimile:  (646) 607-9168

With Copy To:

Wayne R. Landesman, Esq.
D'Agostino, Levine, Landesman & Lederman, LLP
345 Seventh Avenue, 23rd Floor
New York, New York 10001
Telephone:  (212) 564-9800
Facsimile:  (212) 564-9802

9.      Miscellaneous. This Agreement shall be governed by and construed and enforced in accordance
with the internal laws of the State of California, without giving effect to the conflicts of laws principles
thereof. The parties consent to jurisdiction and venue in any federal or state court in the County of
Orange, California. This Agreement states the entire agreement and understanding regarding the subject
matter hereof. This Agreement may be amended only by a written document signed by the parties hereto.
No delay or failure to exercise any right under this Agreement waives such rights under this Agreement.
If any provision of this Agreement is partially or completely invalid or unenforceable, then that provision
shall only be ineffective to such extent of its invalidity or unenforceability, and the validity or
enforceability of any other provision of this Agreement shall not be affected. Time is of the essence of
this Agreement and each provision hereof. Any controversy relating to this Agreement shall be settled by
arbitration in Orange County, California in accordance with the Commercial Arbitration Rules of the
American Arbitration Association. In the event of any inconsistency between this Agreement and any
personnel policy or manual of Company with respect to any matter, this Agreement shall govern the
matter.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

SHOPOFF INVESTORS IV, L.P., a Delaware
limited partnership

By:     The Shopoff Corporation, a Delaware
        corporation, General Partner



        By:  _____
             William A. Shopoff, President

DP SLF II Member, LLC, a Delaware limited
liability company

By:  _____
     David Placek, Manager

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

**EXHIBIT H**

# GUARANTY

This GUARANTY (this *"Guaranty"*) is entered into as of April 4, 2014, by **WILLIAM A. SHOPOFF**, in his individual capacity, and **WILLIAM A. SHOPOFF** and **CINDY I. SHOPOFF**, as Trustees of the Shopoff Revocable Trust dated August 12, 2004 (the *"Trust"*), having an address of 2 Park Plaza, Suite 700, Irvine, California 92614 (collectively, *"Guarantor"*), in favor of **DP SLF II MEMBER, LLC**, a Delaware limited liability company (*"DP II Member"*).

## RECITALS

A.     Concurrently herewith, DP II Member has agreed to contribute, at the times specified in that certain *Limited Partnership Put Agreement (Shopoff Land Fund II, L.P.)* of even date herewith (the *"Put Agreement"*), capital (*"DP II Member's Capital Contribution"*) to Shopoff Land Fund II, L.P., a Delaware limited partnership (the *"Partnership"*), in the amount Four Hundred Ninety-Nine Thousand Seven Hundred Seventy Dollars ($499,410), and by reason thereof is being admitted as a limited partner of the Partnership owning 537 limited partnership units (*"DP II's LP Interest"*).

B.     As an inducement to DP II Member to invest in the Partnership and acquire DP II's LP Interest, without which DP II Member would not have agreed to invest in the Partnership, Shopoff Investors IV, L.P., a Delaware limited partnership (*"Investors IV"*), has agreed to grant to DP II Member a put option (the *"Put Option"*) by which, at DP II Member's election, Investors IV will be obligated to purchase (or cause an affiliate of Investors IV to purchase) DP II's LP Interest at a price and under the terms and conditions set forth in the Put Agreement; and

C.     As a further inducement to DP II Member to invest in the Partnership and acquire DP II Member's LP Interest, without which DP II Member would not have agreed to invest in the Partnership, William A. Shopoff, an individual and principal of Investors IV, and William A. Shopoff and Cindy I. Shopoff, as trustees of the Trust, also principals of Investors IV, have agreed to enter into this Guaranty for the purpose of personally guarantying the obligations of Investors IV under the Put Option.

## AGREEMENT

NOW THEREFORE, in consideration of DP II Member contributing DP II Member's Capital Contribution to the Partnership, the receipt and sufficiency of which are acknowledged, Guarantor hereby certifies, represents and warrants to DP II Member, and agrees as follows:

1.     **GUARANTEED OBLIGATIONS.** Guarantor hereby unconditionally and independently of any liability of Investors IV, guarantees and agrees as follows:

1.1     **Payment Guaranty.** Guarantor hereby irrevocably, absolutely and unconditionally guarantees and promises to pay to or for the benefit of DP II Member, their successors and assigns, on demand after the occurrence or existence of any default, in lawful money of the United States of America, all amounts which are due and payable under the Put Option, when and as required under the Put Option, and attorneys' fees, expenses and court costs (whether incurred in connection with any enforcement activities by DP II Member or otherwise, in any appeal proceedings or in any bankruptcy proceedings involving Investors IV or Guarantor) (all of the foregoing shall be referred to as the *"Guaranteed Obligations"*).

1.2     **No Waivers.** Nothing contained in this Section 1 shall be deemed to be a waiver of any right which DP II Member may have under provisions of the U.S. Bankruptcy Code, or any other provision of applicable law, to file a claim in any United States Bankruptcy Court for the full amount of the Guaranteed Obligations.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

NYSCEF DOC. NO. 15

RECEIVED NYSCEF: 04/09/2018

2.     **PERFORMANCE BY GUARANTOR.**

2.1    **Failure To Perform.** If Investors IV fails to perform the Guaranteed Obligations on or before the times such matters are to be satisfied by Investors IV, Guarantor shall perform, at Guarantor's expense, any such matter which Investors IV has failed to satisfy.

2.2    **Failure To Take Prompt Action.** If Guarantor fails to take any such action promptly, DP II Member may pursue any remedies at law or in equity against Guarantor, without having to proceed first against Investors IV, and may itself take such action, and Guarantor shall be liable to DP II Member for all expenses, including attorneys' fees incurred by DP II Member, and all amounts paid by DP II Member in taking any such action.

3.     **CERTAIN RIGHTS OF DP II Member.** DP II Member may, without the consent of Guarantor, at any time and from time to time:

3.1    Enter into amendments with Investors IV of any provision of the Put Option, including any change in the time or manner of payment thereunder, and/or

3.2    make any agreement with Investors IV for the extension, payment, compounding, compromise, discharge or release of any provision of the Put Option, or either of them, without notice to or the consent of Guarantor.

4.     **WAIVERS BY GUARANTOR.**

4.1    **Waiver of Legal Requirements.** Guarantor hereby waives any and all legal requirements that DP II Member shall institute any action or proceedings at law or in equity against Investors IV or anyone else with respect to the breach of the Guaranteed Obligations or with respect to any security now or hereafter held by DP II Member, as a condition precedent to bringing an action against Guarantor pursuant to this Guaranty. All remedies afforded to the parties by reason of this Guaranty are separate and cumulative remedies and none of such remedies, whether exercised by DP II Member or not, shall be deemed to be in exclusion of any one of the other remedies available to DP II Member, and shall not in any way limit or prejudice any other legal or equitable remedy available to DP II Member.

4.2    **Additional Waivers.** Guarantor hereby waives presentment for payment, demand, protest, notice of protest and of dishonor, notice of acceptance hereof, notices of default and all other notices now or hereafter provided by law.

4.3    **Waiver of Right To Require DP II Member To Proceed.** Guarantor waives all right to require DP II Member to proceed against Investor's IV or any other person, firm or corporation or to apply any security DP II Member may hold at any time or to pursue any judicial, non-judicial and/or provisional remedy. DP II Member may proceed against Guarantor with respect to the Guaranteed Obligations without taking any action against Investors IV or any other person, firm or corporation and without proceeding against or applying any security DP II Member holds.

4.4    **Event of Default.** Upon the failure of Guarantor to satisfy any of its obligations hereunder, DP II Member may maintain an action upon this Guaranty whether or not action is brought against Investors IV and whether or not Investors IV is joined in any such action. DP II Member may maintain successive actions for other defaults, and DP II Member's rights hereunder shall not be exhausted or waived, and DP II Member shall not be estopped to proceed against Guarantor pursuant to this Guaranty, by the exercise of any of DP II Member's rights or remedies or by any such action or by

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

any number of successive actions, until and unless the Guaranteed Obligations have been fully satisfied and each of Guarantor's obligations hereunder has been fully performed or otherwise satisfied.

    **4.5**    **Civil Code Waivers**. Guarantor expressly waives any and all benefits, rights and/or defenses which might otherwise be available to Guarantor under California Civil Code Sections 2787 to 2855, inclusive.

    **4.6**    **ACKNOWLEDGMENT OF WAIVERS**. Guarantor acknowledges that it has relied on the advice of its own counsel in making this Guaranty and has reviewed the waivers of rights contained herein with its counsel. Guarantor further acknowledges that it understands and accepts as a necessary part of this Guaranty the waivers of rights set forth above, after reviewing the extent and effect of the waivers in this Guaranty with its counsel.

**5.**    **GUARANTOR'S WARRANTIES**.

    **5.1**    Guarantor warrants and acknowledges that:

      **5.1.1**    there are no conditions precedent to the effectiveness of this Guaranty, and this Guaranty shall be in full force and effect and binding on Guarantor regardless of whether DP II Member obtains other collateral or any guarantees from others or takes any other action contemplated by Guarantor; and

      **5.1.2**    Guarantor has established adequate means of obtaining from sources other than DP II Member, on a continuing basis, financial and other information pertaining to Investors IV's financial condition and Investors IV's activities relating thereto and the status of Investors IV's performance of obligations imposed by the Put Option, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and DP II Member has made no representation to Guarantor as to any such matters;

**6.**    **NO RELEASE**. Until the Guaranteed Obligations have been fully satisfied, and until all of the terms, covenants and conditions of this Guaranty are fully performed, Guarantor shall not be released by any act or thing which might, but for this paragraph, be deemed a legal or equitable discharge of a surety, or by reason of any waiver, extension, modification, forbearance or delay of DP II Member or its failure to proceed promptly or otherwise, or to any of the other terms, covenants and conditions contained therein, and Guarantor hereby expressly waives and surrenders any defense to this liability under this Guaranty based upon any of the foregoing acts, things, agreements or waivers.

**7.**    **NOTICES**. Except as expressly provided herein to the contrary, any notice, demand or request by DP II Member to Guarantor shall be in writing and shall be duly given or made to Guarantor if either delivered personally or if mailed by U.S. registered or certified mail to Investors IV at the address for Investors IV appearing in the Put Option.

**8.**    **GOVERNING LAW**. This Guaranty shall be governed by and construed in accordance with California law, without regard to conflicts of law principles.

**9.**    **BINDING EFFECT**. This Guaranty shall inure to the benefit of DP II Member and their successors and assigns and shall be binding upon the heirs, personal representatives, successors and assigns of Guarantor.

**10.**    **JURY TRIAL WAIVER**. Guarantor irrevocably waives and agrees not to assert, by way of motion, as a defense or otherwise, any right which it may have to a trial by jury in connection with any

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (SEE BELOW.) Case 8:18-cv-02187-DOC-JDE Document 1 Filed 12/10/18 Page 71 of 71 Page ID #:71

NYSCEF DOC. NO. 15

RECEIVED NYSCEF: 04/09/2018

suit, action or proceeding arising out of or relating to this Guaranty, all to the fullest extent permissible under applicable law.

11. **SEVERABILITY.** Every provision of this Guaranty is intended to be severable. If any term, provision, section or subsection of this Guaranty is declared to be illegal or invalid, for any reason whatsoever, by a court of competent jurisdiction, such illegality or invalidity shall not affect the other terms, provisions, sections or subsections of this Guaranty, which shall remain binding and enforceable.

13. **FEES AND EXPENSES.** Guarantor agrees to pay all of the DP II Member's costs and expenses, including reasonable attorneys' fees, which may be incurred in any effort to enforce any term of this Guaranty, including all such costs and expenses which may be incurred by DP II Member in any legal action, reference or arbitration proceeding.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date first above written.

WILLIAM A. SHOPOFF, individually and as Trustee of the Shopoff Revocable Trust dated August 12, 2004

CINDY I. SHOPOFF, Trustee of the Shopoff Revocable Trust dated August 12, 2004

LAND FUND II $0.5M PUT GUARANTY.doc

Page 4 of 4

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.